No. 14,484.

STATE EX REL. ROSA L. DAUPHIN VS. HON T. C. W. ELLIS, JUDGE, ET AL.

SYLLABUS.

The law maker having vested the District Courts with jurisdiction to appoint receivers in certain specified cases, and having provided other remedies and other modes of procedure in other cases, the exercise of the jurisdiction so vested must be confined to the cases specified; and prohibition will lie to restrain further action in the matter of the *ex parte* appointment of a receiver in a case not included in such specification.

A PPLICATION for Writs of *Certiorari* and Prohibition.

*Clegg & Quintero,* and *Saunders & Gurley,* for Relatrix.

*Lazarus & Luce, George W. Flynn* and *Thomas M. Miller,* for Choppin *et als.* Respondents.

The opinion of the court was delivered by

MONROE, J. · The facts upon which this application is predicated are, substantially, as follows:

Cecelia Choppin, widow in community of M. A. Dauphin, died in

1883, but her succession was not opened. In 1887, Dauphin married Rosa LaBranche, with whom he lived, also in community, until his death, in 1890. There were no children of either marriage, and the decedent, by his last will, after a legacy of 100,000 francs to his mother, and a few other legacies, named his surviving widow as his universal legatee, and appointed her and Paul Conrad his executors, and they qualified and caused an inventory of his estate to be taken. Thereafter, in 1891, the heirs of Cecelia Choppin brought suit against said executors, claiming one-half of certain property, real and personal, said to have been acquired by the decedent during the first community, and also claiming reimbursement of certain paraphernal funds of the first wife. And, a few months later, the mother of the decedent brought suit claiming, as forced heir, one-third of the estate, in addition to her legacy. This latter claim was at once disposed of by the claimant's selling her interest in the succession, "as per inventory on file," to Paul Conrad, one of the executors, for $30,500. This was followed, upon May 13th, 1892, by a judgment in favor of the Choppin heirs, and, on June 3rd, by a notarial act of compromise whereby they accepted $40,000 in satisfaction of their claim, except as to certain property in Alsace. On June 17th, the judgment mentioned was amended and recast, presumably in conformity to said compromise, and it was signed on the same day. Thereafter, on June 28th, 1892, the executors filed their final account, with a petition in which they alleged, among other things, that judgment had been rendered in favor of the Choppin claimants, recognizing them "as the only legal heirs of the said Cecelia Choppin, entitled to her succession, "and that certain property, securities, stocks, bonds, funds, rights, and credits, enumerated in the inventory" * * * "formed part of the community heretofore existing between M. A. Dauphin and his wife Cecelia Choppin," and that the said claim and judgment had been settled, as per the act of compromise mentioned. The petition also set forth the settlement made with the mother of the decedent, alleged that the succession had been fully administered, and prayed that the widow, as universal legatee, be recognized as owner and placed in possession of the property belonging to the succession "as described in the inventory," and which was specially described in the petition, and that the petitioners be discharged and their bond cancelled, and there

was judgment accordingly, rendered, and signed, June 28th, 1892. Upon April 8, 1901, the Choppin heirs again appeared in court by means of a petition, filed in the matter of the succession of M. A. Dauphin, in which they allege, in substance, that at the time of the death of M. A. Dauphin, there were certain negotiable stocks and bonds, which they enumerated, of the par value of $155,000, acquired by him during the existence of the first community, at his residence, and that they were taken possession of, after his death, by his widow, or others acting for her, in order to prevent their appearing on the inventory of the succession and to conceal them from the heirs of the first wife, and that said securities were omitted from said inventory, and effectually concealed, and that the petitioners had no knowledge of their existence until within the preceding year. They allege that the judgment in their favor of June 17th, 1892, was based, to the extent indicated, on fraudulent misrepresentation and suppression of evidence on the part of the widow and of those who acted in her behalf, and that it was signed prematurely and should be annulled in so far as it undertakes to limit petitioners' interest in the estate of Cecelia Choppin Dauphin to the property included in said inventory, and that the compromise entered into by them should be similarly dealt with. They further allege that, after said compromise had been effected and said judgment rendered, the securities referred to were restored to Mrs. Rosa LaBranche Dauphin, and that she converted them to her own use and is liable for their present market value and for interest collected thereon since December 30th, 1890. And they pray for judgment annulling the compromise of June 3rd, and the judgment of June 17th, 1892 in so far as they undertook to adjust the rights of petitioners in the succession of Cecelia Choppin Dauphin or to determine the interest of said succession in the community which had existed between said Cecelia Choppin and Maximilian A. Dauphin, and condemning Mrs. Rosa LaBranche Dauphin to account for the securities enumerated, with the revenues collected therefrom, or to pay $155,000 or so much thereof as may be due to the succession of Cecelia Choppin Dauphin.

To this petition, the defendant excepted that the succession of M. A. Dauphin had been closed, and that said petition had been improperly filed therein, and had not been allotted as required by the rules of court, and she further pleaded the prescription of one year.

Upon June 6th, 1901, the plaintiffs filed a supplemental petition, alleging that securities, other than those mentioned in the original petition, to the value of $40,000 as also current money to the amount of $50,000, had been similarly abstracted, and not accounted for in the inventory of the succession of M. A. Dauphin, and propounding to the defendant interrogatories on facts and articles. To this, the defendant filed an exception calling on the plaintiff to furnish the names of the persons alleged to have aided and co-operated with her in concealing the securities and money sued for; and another supplemental petition was filed, complying with that request. The answer of the defendant followed, in October, 1901, and she therein, among other things, denies that any securities were abstracted, as alleged, or that fraud or concealment were practiced, and alleges that the inventory filed in the succession of her deceased husband was true and correct. Thereafter, upon March 27th, 1902, the trial of the case having in the meanwhile been proceeded with, the plaintiffs filed still another supplemental petition, in which they allege, that the evidence taken discloses that the defendant has sold or disposed of many of the securities, and that she has converted the same, as also the current money, claimed, into other securities, thereby realizing large profits, and praying that the judgment (of June 17th, 1892) be vacated in so far as it purports to affect any securities or money not included in the inventory, and that there be judgment decreeing to belong to the succession of M. A. Dauphin;

1. The property described in the original and supplemental petitions already filed.

2. All assets fraudulently withheld from the inventory and not accounted for.

3. All the profits accruing therefrom.

4. All assets acquired with the proceeds thereof.

That, in default of the recovery of the original securities, or of the assets acquired with the proceeds of the same, "the succession of Dauphin and plaintiffs have judgment" for the value thereof. This is followed by a prayer that the defendant "be made to account fully to said succession for any and all property, securities, and moneys, or the value thereof, not already accounted for;" and, this in turn, is followed by the prayer, "that the judgment heretofore rendered" (of June 28), "in so far as it closes said succession of M. A. Dauphin and discharges

the executor and executrix, be set aside; that said succession be re-opened and a dative testamentary executor be appointed; that all property, monies, securities, their proceeds, or the profits thereon, and acquisitions therewith, not inventoried and accounted for, be brought back into said succession, subject to be administered and distributed to the parties entitled thereto;" and, finally, "plaintiffs pray, as in their original and supplemental petitions, that this amendment be served and defendant be cited to answer hereto, and for costs and for full general and equitable relief."

On the same day, certain heirs of Mrs. Barbara Fauth Dauphin, alleging her death, and making substantially the same charges as are made by the heirs of Cecilia Choppin Dauphin, filed an intervention, in which they pray for judgment decreeing the defendant to be with-out title to the securities and money specified by them "because of her embezzlement and concealment" of the same.

To these pleadings, exceptions were filed, and an application with reference thereto was made to this court, and it was here held that the remedy was by appeal from the final judgment to be rendered. Fol-lowing this, upon the 19th of the present month (May, 1902), the plaintiffs and intervenors, jointly, filed a petition alleging that, by the evidence adduced on the trial of the case, it had been established that the defendant "did abstract and embezzle from the succession of the late M. A. Dauphin the property described; * * * that she has fraudulently disposed of the same to her own use, benefit and advan-tage, and, with the proceeds of the sale thereof, reinvested said moneys and funds in other securities; * * * that * * * knowing * * * that she was about to be held accountable * * * she did, with a view to defeating the court's process, and its judgment, in the event that one should be rendered, * * * cause to be removed from the jurisdiction of this court, on December 13, 1901, the movable property of said succession, either then in existence, as property of said succession, or the representative of property of said succession, previously disposed of and invested in other securities; * * * that, as appears by the record and the proof administered, * * * the said Rosa LaBranche Dauphin had on deposit, in the safety vault of the Whitney National Bank, personal securities, consisting of notes, stocks, bonds and current money, of a value exceeding $400,000;

that, on the 13th day of December, without notice either to the court or to the parties litigant, upon her order, she directed the delivery of the contents of said box to one George Michel, who, acting under her directions, removed the same from the jurisdiction of this honorable court, and, with a view to defeat its process; that, by her direction and through her instrumentality, said George Michel has been kept without the jurisdiction and evades the process of this court, although he is a citizen of the State of Louisiana and a resident of the parish of Orleans * * * that the property, rights and credits thus removed * * * were * * * subject at all times to the jurisdiction of this court, constituting, as petitioners charge, the property of the succession of the late M. A. Dauphin; that, pending the inquiry and decision in this cause, as to whether the said property constitutes part of the estate of said M. A. Dauphin, and is subject to the jurisdiction of this court for administration and disposition in accordance with law, the same should be conserved, in the interest of the parties litigant, in order that their rights may be preserved, and the judgment of this court be enforced; that it is necessary, in order to further the ends of justice, and in order to prevent a miscarriage of the same that a receiver should be placed in charge of the property, rights and credits, and assets of the estate of the late M. A. Dauphin, and more particularly of all stocks, bonds, moneys, credits, negotiable securities, of whatever nature or kind, now in possession of Rosa LaBranche Dauphin, or any one acting for her and holding said property for her account and under her directions, a proper inventory to be taken in order to preserve the record of the property coming into the receiver's possession, said property to be held by said receiver until the hearing and determination of this cause, with the right in said receiver. when so appointed, to take such further action in this, or any other, jurisdiction as he may be advised is due and proper in protection of the rights of the parties litigant in this cause and in furtherance of the ends of justice, and that the jurisdiction of this court may be safeguarded against invasion or evasion by the acts of the parties to this cause."

"Wherefore the premises and annexed affidavit being considered, petitioners pray that an order be entered herein appointing a proper and discreet person receiver, with all the powers incident to the duties

of a receiver, to take possession of, and keep in his custody, in his capacity as receiver, all the monies, stocks, bonds, and negotiable securities abstracted from, and belonging to, the succession of the late M. A. Dauphin, if existing in kind, and if converted into other stocks, bonds, securities or money, to demand the possession from the said Mrs. Rosa Labranche Dauphin of said stocks, bonds, securities and monies and to take possession thereof, and to hold in his safe custody and keeping the property coming into his possession as receiver, for the further and future action of the court in the premises, with directions to said receiver, if so advised, to take such other proceedings as may be deemed proper to reduce to his possession the property of the estate of the late M. A. Dauphin, which has been removed from the jurisdiction of this court."

This petition is sworn to by one of the plaintiffs, to the best of his knowledge and belief, and there is a further affidavit, by the same party, that he is informed and believes that the defendant is "disposing of her property, or converting the same into money or other evidences of indebtedness, with intent to place it beyond the reach of judicial process and the demands of your petitioners, and he is advised, informed and believes, and so charges the fact to be, that her purpose and intention is, within the immediate future, to leave the United States and seek refuge in some foreign country, or parts unknown to your affiant. Affiant further says that if the said Mrs. Rosa LaBranche Dauphin should remove her property beyond the jurisdiction of this State, or of the United States, or should convert the same into money or evidences or indebtedness, as aforesaid, his interests, in common with those of his co-plaintiffs, will be endangered, and that, in the event that he should secure the relief sought, the process of the court will be ineffective, and the ends of justice defeated, that the relief prayed for by the amended petition filed herein is necessary to protect the rights of the plaintiffs and that they are entitled to the relief therein sought, pending the investigation, as a matter *ex debito justitia*, and as a matter of right."

There, is also an affidavit filed by Walter J. Gex, as follows, to-wit:

"That he is a practising lawyer in the town of Bay St. Louis, Hancock County, Mississippi; that, while in the office of the chancery clerk of said county, on the 30th day of April, 1902, he saw filed therein for

record a deed, from Rosa LaBranche Dauphin, widow of M. A. Dauphin, purporting to convey to one Michel, whose Christian name he does not now recall, the real estate and personal property, including the residence occupied by said Mrs. Dauphin, at Waveland in said .county, the consideration recited being $7000. He further states that he casually mentioned this fact to his friend Mr. T. M. Miller, and at his instance, not to be disobliging, he makes this affidavit, having no .concern or interest in the matter."

Thereupon, on May 2, 1902, the judge *a quo* made the following .order, viz:

"Considering the averments contained in the foregoing petition, and the affidavits of Walter J. Gex and of S. D. Choppin, of May 2, 1902, .and considering the issues formulated and the evidence administered in this cause, without prejudging the cause at this time, or expressing .any opinion with regard to the views entertaned by me, either on the merits of the controversy or on the legal propositions involved, and which have not been discussed or considered, but with a view to con- serve, in the interest of all parties to this controversy, the rights of the parties, and to have subjected to the court's process, whatever may be its future action, the control of the property, the subject of this con- troversy. It is now ordered that John J. Frawley be appointed a receiver of all the property, rights, and credits, of whatever nature or kind, claimed as belonging to the late M. A. Dauphin, the said receiver being directed to demand of Mrs. Rosa LaBranche Dauphin, defend- ant, possession of the following stocks, bonds, and negotiable instru- ments" (here follows a list including certain bonds and $50,000 in .current money), "and the dividends arising from said stocks, bonds and securities since 1891, as well as interest upon said current money, charged to have been abstracted from and not mentioned in the suc- .cession of the said M. A. Dauphin; that this right to demand posses- sion and control, and to have the custody and keeping, of said stocks, bonds, and money, as well as all stocks, bonds and money now in the hands, or under the control, of said Rosa LaBranche Dauphin, being the fruits or proceeds of the conversion of funds so specified, shall be upon said Mrs. Dauphin and those holding for her and under her directions with the right in said receiver, if he is so advised, to invoke the aid of other jurisdictions to enable this court, primarily charged

with the administration of the succession of M. A. Dauphin, to have control and direction of the property of said succession; that the said receiver shall take the oath required by law, and shall inventory the property coming into his possession, whether it be specific and in kind, or whether the items above enumerated were sold and the proceeds reinvested in other securities; that the said Rosa LaBranche Dauphin is hereby commanded to surrender the same to the said receiver, upon his issuing to her his receipt therefor; said receiver to give a bond of $100,000 for the custody and safe keeping of the property coming into his possession as receiver under the order herein, the purpose of this order being to preserve said property pending this litigation."

Though this order appears to have been made May 2nd, neither the petition upon which it was made nor the order itself were placed upon record at that time. And thereafter, on May 17th, the defendant, through her counsel, appeared in this court, applying for writs of *certiorari* and prohibition. For the purposes of this application, she recites the facts substantially as they have been herein stated, and she further alleges that the petition and affidavit mentioned, though presented to, and acted on by, the judge *a quo* some time earlier, were, by his authority, withheld from the archives of the court, and were not entered on the regular docket until May 16th, and that, in the meanwhile, the counsel for plaintiffs presented a copy of said petition and order to a chancery court in Mississippi, and, representing that a receiver had been legally appointed in Louisiana, induced said court to make a similar appointment for the State of Mississippi. She further alleges that special care was taken to conceal said proceedings, that neither she nor her counsel had any knowledge of them until May 16th, when such knowledge was accidentally acquired, and that they are illegal and void for the reason that the district court was without jurisdiction to appoint a receiver in the manner and for the purposes thereby disclosed. And she accordingly prays for *certiorari* and prohibition. The judge *a quo* makes the following return to the order *nisi*, issued from this court, to-wit:

"In obedience to the order of this honorable court, I have directed that the record in the matter of the succession of M. A. Dauphin be transmitted for examination. In answer, otherwise, I submit the following as my reasons for taking the action complained of by relatrix:

The evidence, oral and documentary, produced before me, during the trial of the pending case of the heirs of Choppin vs. Relatrix, has established that the stocks, bonds, and values appearing on what is known as the "Poché list" formed part of the estate of M. A. Dauphin, at his death, that they were never inventoried or accounted for by relatrix, as executrix, nor by Paul Conrad, deceased, her co-executor, but that relatrix has personally held the same, collecting the dividends and dealing with all this succession property for her own personal account. Knowledge of its existence was withheld from the court and from the heirs of Choppin and the heirs of Dauphin. In her answers to interrogatories, relatrix denies all knowledge of those securities. During all the time of the trial, relatrix has, on account of ill-health, as is alleged and shown, been away from her domicile here, and beyond the process of the court, in the State of Mississippi. Paul Conrad, Jr., a witness was personally summoned here, but, before an attachment could reach him, went also into the State of Mississippi. For the same reason, plaintiffs have failed to secure the attendance of young Mr. Michel and Miss Michel for examination in regard to said securities and their removal, after suit brought, beyond the state limits. The heirs of M. A. Dauphin intervened and joined plaintiffs in claiming said securities. The heirs of Choppin claim them as acquisitions of the community between M. A. Dauphin and Cecilia Choppin, his first wife. Whether they are legally to go to the Dauphins, or to the Choppins, or to the relatrix, as widow, I do not know, and express no opinion. That they do belong to M. A. Dauphin's succession and that they have been withheld from the inventory and administration by relatrix, personally, clandestinely, and for her own personal use, there is no doubt. When the heirs of Choppin and Dauphin applied for a receiver, I had no doubt of my duty, as probate judge, to have this abstracted property returned to the succession. Judicial sequestration seemed a remedy, but as the property was concealed, and in another state, and has to be sued for there, by ancillary proceedings, to get it from relatrix, who was Dauphin's executrix, it was suggested that a receiver, with letters, would be recognized by any court of another State, while a judicial sequestrator would not. Names are nothing, substance is everything, so I concluded to appoint a receiver, finding by examination of the authorities produced, that I had power

State ex rel. Dauphin vs. Judge.

to do so. I appointed the receiver and ordered letters to issue upon his giving bond. I ordered, for good reasons suggested by counsel, that the clerk keep the papers relating to this matter from publicity. The petitioners feared that, if notified, the relatrix would place the property and herself beyond pursuit. On the same principle, indictments are kept on secret files until the accused can be arrested. When search warrants issue, the person to be searched is not notified in advance, nor is the defendant whose goods are to be attached. Considering that relatrix had placed herself beyond the state limits, and had removed the succession property there and that she denied its existence, and conceals it, if plaintiff's evidence, allegations, and affidavits be true, I felt it my duty to take all necessary measures to vindicate my jurisdiction, as probate judge, over said property, and to cause its return for administration and disposal for whom of right. To this end, I appointed a receiver, whose bond and letters would give him standing in our sister state, that, by ancillary proceedings he might recover and bring back to this jurisdiction the concealed and abstracted property, and I directed that the matter should be kept from publicity until he should be in a position to act effectively, and no longer, and this was done as directed. I accept service of relatrix's petition and waive all notice and delays and will render faithful obedience to whatever may be the further orders of this honorable court, whose sole desire, I well know, as is my own, is to see justice done, and that the law shall not prove weak and shrinking, where justice requires that it shall be strong and firm."

## OPINION.

An order for the appointment of a receiver is more comprehensive in its effects than either an attachment, a sequestration, or an injunction, or, in fact, than all of those writs, combined, and is said to reverse the ordinary course of procedure in the administration of justice by levying a species of execution and determining afterwards who is entitled to the benefits. Until recently, no specific authority had been conferred on the courts of this state for the making of such appointments, and, under the early jurisprudence, there were but few cases in which its exercise was permitted. In Frazier vs. Wilcox, 4 R. 525, where, by consent of all parties interested, the plaintiffs had been appointed receivers, this court said:      .      .

"In deciding that the plaintiffs can maintain the present action, we are not to be understood as giving our sanction to an opinion, sometimes expressed, that the judges of the inferior courts, without the assent of the parties to a suit, or with the consent of only one of them, can exercise the powers of a chancellor, and appoint, of their own accord, receivers, for the purpose of collecting and keeping the funds attached, or that may be the subject of the litigation. Our opinion is, that the capacity of the plaintiffs is derived entirely from the consent of the parties who were interested at the time they were appointed. We do not believe that the assent of the judge added to their powers in the slightest degree, but it may be a security to the parties to have the conduct of their agents under their supervision and that of the tribunal before which their case is pending. The fact that the appointment of the plaintiffs is entered on the records of the commercial court, gives no powers not conferred by the terms of their procuration and the laws."

Two years later, in 1845, in the case of United States vs. Bank of United States, 11 R. 433, it was said:

"It appears to us that the judge of the commercial court labors under a misapprehension as to the power and control he has over the agents appointed by parties to superintend their interests in the tribunal over which he presides. We have more than once said that he has no right to appoint receivers and trustees, of his own accord and will, to take charge of money or property, unless in the cases pointed out by law. The law designates who the judicial sequestrator is, and the judge cannot name another unless the parties agree to his doing so."

In 1848, a case was presented in which the plaintiff, having obtained judgment against a corporation, issued execution and garnished a stockholder with respect to his subscription. He was met with the objection that the corporation itself had gone out of business and had ceased to exist by reason of its failure to elect officers, and that no valid execution could be issued against it. This court said:

"A corporation can never dissolve itself so as to defeat any of the just rights of its creditors. In this case, the officers once appointed are required by the charter to continue in office until the others are elected, and if they should die, absent themselves, or refuse to act, and it was made to appear that the stockholders neglected to appoint others, to the

injury of the creditors, we would, on a proper case being made out, feel ourselves authorized to order the appointment of a manager, in the interim, for the purpose of winding up and putting an end to the concern. This appointment would in no wise differ from that of a receiver, which our courts frequently make to settle the affairs of insolvent banks and partnerships."

And, after citing an English case in which the Lord Chancellor had stated that such an appointment might be made, the court went on to say:

"Under the equity powers vested in our courts and the imperative command of the law that, in cases not provided for, the judge shall proceed and decide according to equity, they might adopt a similar course, if it became necessary to prevent the failure of justice." Brown vs. Union Ins. Co., 3 Ann. 177.

This was followed, in 1850, by a case in which it appeared that there· was a corporation owing large sums and having large sums due it, and. which, though in process of liquidation, was without a legal represen- tative. The district court had appointed a receiver, but had subse-- quently held that the appointment was unauthorized. On the appeal. to this court, it was said:

"We consider that there can be no question as to the power of the· court, in view of the condition of the affairs of the company, as exhib- ited by the proceedings before it, to appoint a receiver for the preserva- tion of the interests of all concerned. The court, *ex proprio motu*, was· bound to prevent the confusion and dilapidation consequent upon the· abandonment of its affairs produced by the inefficiency of the law under which Stark had taken possession of, and continued to hold, the records, papers and assets of the company. The proceeding for the· forfeiture of the charter of the company, as far as it had progressed, being before the fifth district court, we think that court properly exer- cised its authority in making the appointment." (Citing Brown vs.- Ins. Co., 3 Ann. 177.) Stark, Receiver, vs. Burke, Watt & Co., 5· Ann. 740.

And the doctrine of these cases was affirmed in N. O. Gas Light Co.- vs. Bennett, 6 Ann. 456, and Follett *et als.* vs. Field, 30 Ann. 161.

In Baker *et als.* vs. La. Portable R. R. Co., 34 Ann. 755, it was said,. that, in this state "courts have no jurisdiction to appoint receivers for

corporations in absence of express statutory authority;" and that "this court recognizes no exception to this rule unless it be where corporate property is abandoned, or where there are no persons to take charge of, or to conduct its affairs."

In the matter of the Louisiana Savings Bank, 35 Ann. 196, being a case in which receivers had been selected by the parties in interest, and the court was merely asked to confirm the selection, the doctrine as enunciated in the case last above cited was modified, or explained, in the following language, to-wit:

"Where, in the case of Baker vs. Portable Company, 34 Ann. 754, we laid down the general rule that, 'courts have no jurisdiction to appoint receivers for corporations in absence of express statutory authority,' the word 'jurisdiction' was perhaps inaccurately used. The exception which we maintained in that case was not one to the jurisdiction of the court but one of no cause of action. Certainly we did not mean to impute to the courts such defect of jurisdiction, *ratione materiae,* as could not be supplied by consent and as would render their judgments in the premises absolute nullities. We rather meant to lay down a rule of judicial action than a canon of jurisdiction—a limitation of judicial power. That rule is founded upon the respect and protection due to the rights of a corporation in common with those of other persons. As we said in that case: 'A corporation is a person whose possession and control of its own property and affairs must be respected like the similar rights of individual persons. They cannot be interfered with in preliminary proceedings and in advance of judgment except in cases specially provided by law, and on strict compliance with the requirements thereof.' "

In the meanwhile, that is to say, as far back as 1847, the appointment of a receiver for a partnership had been sanctioned in the following language, to-wit·

"We consider the power of the court to appoint a receiver in a case of this kind to be necessary for the purpose of effecting the object of this suit, which is the liquidation and settlement of a partnership, and it falls within that incidental class of powers which courts have full authority to exercise. Story on Partnership, Sec. 333; C. C. Art. 21. Our courts are not organized with the proper machinery for the settlement of complicated partnership concerns. They are still obliged to determine and conclude matters of this kind, and they have the power

necessary for the exercise of their jurisdiction, although such powers may not be expressly given them by law. C. P. 130." Gridley vs. Connor, 2 Ann. 87.

This was followed, in 1856, by another case involving the liquidation of a partnership, in which it was said:

"There is no error in appointing a receiver. It is one of those matters which must be left in a great measure to the sound discretion of the court." Pratt vs. McHatton, 11 Ann. 264.

In 1861, a receiver was appointed, *ex parte,* in a similar case, and, in reversing the judgment making the appointment, this court took occasion to refer to the decisions in Frazier vs. Wilcox, and U. S. vs. U. S. Bank (*supra*), and to quote with approval the opinion of the case first mentioned to the effect that the judges of the inferior courts are without authority to appoint receivers save with the consent of the parties in interest, to which was added the following, as applicable to the case decided:

"According to the law and the adjudged cases before us, there were two courses open to the plaintiff for the provisional assurance of their interests, pending this litigation; the one, to have sued out a writ of sequestration, which would have necessitated the giving of a bond; the other, to have taken a rule upon the defendants to concur in the appointment of a receiver by the parties."

And, upon the application for rehearing, it was said:

"It is contended that our decision is inconsistent with two cases decided by our predecessors, Brown vs. Union Ins. Co., 3 Ann. 177, and Starke vs. Burke, Watt & Co., 5 Ann. 740; also with the case of Pratt vs. McHatton, 11 Ann. 260, decided by the present bench. Brown vs. Union Ins. Co. and Starke vs. Burke, Watt & Co., were cases of insolvent corporations, and the appointments were made by the court, *ex necessitate,* in the absence of parties able to appoint a liquidator or a receiver. In Pratt vs. McHatton, no objection seems to have been made to the appointment of a receiver until the case was in the Supreme Court, on appeal, and the objects of the appointment had been accomplished by the sale of the assets of the partnership." Martin vs. Blanchin, 16 Ann. 237.

As the result of the decisions thus referred to, the doctrine was established that the authority of the courts of this state to appoint receivers for corporations and partnerships was limited, where corpora-

tions were concerned, to cases in which they were without represent-
atives, and their property was, in a manner derelict, or to those in
which the parties interested consented to, and practically made, the
appointments and asked the courts to ratify them; and, where part-
nerships were concerned, to cases in which the applicants called upon
those as against whom the applications were made to concur in the
appointments. If, during the period over which this jurisprudence
extends, the appointment of a receiver was asked or sanctioned in any
class of cases other than those mentioned, the fact has escaped a most
careful research.

There have, no doubt, been members of the bar, and of the bench,
who were disposed to think that the authority by virtue of which
receivers were appointed in the particular cases mentioned might rea-
sonably be extended to other cases; and the interpretation placed by
this court upon the law applicable to the subject had undergone some
modification prior to the adoption of the present constitution. But,
in recognizing that fact, in a comparatively recent case, this court
took occasion to say that a proper limit had been reached in the exer-
cise of such power and that the courts ought to go no further unless
expressly authorized by legislative enactment, the language used being
as follows:

"Our courts, without any statutory provision upon the subject, have,
in aid of their jurisdiction, and as warranted by the exigencies of
cases, adopted and established the practice of appointing receivers.
But this has not proceeded farther, and should not, without legislative
enactment, proceed farther than in making such appointments in cases
where the parties litigant agree that it be done, or where it is neces-
sary to the execution of a judgment of the court, or, in a case where,
the property in controversy being under seizure by a writ of the court,
and in custody, it is necessary, as a conservatory process, to care for, or
administer, the same, or where the property of a corporation is aban-
doned, or there are no persons authorized to take charge of, and con-
duct, its affairs, or where it is done in aid of proceedings, pending
before the court, for the liquidation of the affairs of a corporation and
rendered necessary for the preservation of the interests of all con-
cerned." *In re*. Moss Cigar Co., Limited, 50 Ann. 789.

Upon the question of the necessity for affording a hearing to the
parties interested before appointing a receiver, in any case, the de-

cisions of this court have been uniform and emphatic. In State *ex rel.* Brittin *et als.* vs. City, 43 Ann. 829, it was said (quoting from the syllabus, which is fully sustained by the text) : "Courts have no power to appoint a receiver *ex parte,* without notice to, or hearing of, the parties in interest."

And, to the same effect are the decisions in Ober *et als.* vs. Manufacturing Co., 44 Ann. 570, and Mestier vs. Chevalier Pavement Co., 51 Ann. 142.

In view, no doubt, of this jurisprudence, the condition of affairs with regard to the appointment of receivers for corporations and partnerships was considered unsatisfactory, and the framers of the present constitution deemed it advisable to place the authority of the district courts for the parish of Orleans, and throughout the state, beyond further controversy, by distinctly vesting them with jurisdiction to make such appointments. Article 133 of the constitution, accordingly, reads, in part: "The civil district court shall have * * * exclusive, original civil jurisdiction * * * of all proceedings for the appointment of receivers or liquidators to corporations or partnerships."

Article 109 confers like jurisdiction on the district courts throughout the state. And this was followed by the adoption of act No. 159, of 1898, which specifically regulates the appointment of receivers for corporations. It is reasonable to suppose that the members of the convention that framed the constitution were aware of the fact that in some jurisdictions the courts have authority, recognized as inherent, or, as in most cases, conferred by express grant, to appoint receivers in other cases than those for which they, thus, provided, and the fact that they did not see fit to vest such authority in the courts of this state, but confined the grant to the cases specified, justifies the presumption that it is not the intention that it should be exercised in any other cases.

"Where the legislature has prescribed the cases in which a receiver may be appointed and other provisional remedies granted, the specification of the cases in which a receivership may be had excludes every other case, and prohibits the appointment except as authorized." Am. Eng. Ency. of Law (1st Ed.), Vol. 20, p. 31.

This rule of construction is applicable in the instant case, not only to the constitutional and statutory provisions specially referred to, but to the pre-existing conditions. In Gridley vs. Connor, and Brown

vs. Union Ins. Co. (cited *supra*), it had been found that our law failed to provide for the administration of the affairs, in the one case, of a partnership, and in the other of a corporation, and it was therefore held, under C. C. 21, that it was competent for the courts to proceed according to equity. In the instant case, we have neither a partnership nor a corporation to deal with, but a litigation involving the right to obtain a personal judgment against an individual, and to have certain movable assets, which are beyond the limits of the state, decreed to belong to a succession which the plaintiffs seek to re-open. Whether we consider the proceeding in the one or the other of these aspects, or, as a whole, it cannot be said to present a condition for which the law has made no provision, and with respect to which the courts should undertake to provide a new and untried remedy. For the purposes of an ordinary action, by one individual against another, the plaintiff may call to his aid either, or all, of the conservatory writs, authorized by the Code of Practice. But those writs are, more or less, harsh in their operation, are invoked at some risk and are issued only upon a strict observance of the requirements of the law. As to the matter and manner of dealing with successions and with the property of successions, the provisions of our law are at once specific and comprehensive, the methods to be adopted by the courts and the agencies through which they are to act being regulated with the utmost particularity and forming a system the mastery of which may be regarded as amongst the most imperative requirements of a legal education in this state. The proposition involved in the appointment of a receiver in this case is, that these various provisions of the law are inadequate for the accomplishment of the particular result which the plaintiffs have in view, and that, for the purposes of an ordinary suit, or, for a proceeding to reopen and administer a succession, and to secure the possession of movable property and money situated in a foreign jurisdiction, the courts of this state are to engraft on to the legal machinery and remedies which the law maker has thought proper to provide something additional, for which no law can be found. Or, to state it more specifically, that, to the writs of attachment, arrest, sequestration, injunction, execution, etc., and to the offices of executor, administrator, curator, judicial sequestrator and sheriff, there shall be added by the courts, a receiver, vested, in this instance, with authority to demand

and recover property and money said to belong to the succession of M. A. Dauphin,. whether found within the limits of this state or of some other state, or country, and whose course of procedure is to be governed by the advice to be given him, from time to time, by plaintiff's counsel. In considering this proposition, the question presents itself, what would the law making department of the government do with it, if it were presented to that department? We know that, almost at the end of a century, the people of this state, assembled together for the purpose of framing our fundamental law, authorized the appointment of receivers in cases of corporations and of partnerships, but that the authority to make such appointments in other cases was, and has been, withheld. If that convention were reassembled, have we any assurance that it would supply the omission and would provide that receivers should be appointed to successions, and in ordinary cases, and should be vested, by the courts, with authority to execute judgments, thereafter to be rendered, and to go into foreign jurisdictions and there to act as they may be advised by counsel representing one or more of the parties litigant? And supposing that this question could be answered in the affirmative, would it not show that the matter is within the domain of legislative, rather than of judicial, action? And if that be true, is it not apparent that, the law-making power having taken such action as to it deemed proper, the judiciary would be exceeding its authority in attempting to amend the action so taken?

The case of Schwan vs. Schwan, 52 Ann. 1183, which seems to be somewhat relied on to support the action here complained of, is inapplicable. In that case, there was a judicial sequestration of property within the jurisdiction of the court. The writ issued was, therefore, one provided by the Code of Practice. The district court had, also, appointed a receiver, for a corporation domiciled in New Orleans, but the appointment was set aside by this court.

The only other question in the case before us is that arising from the action of the respondent in directing the clerk to withhold the application to, and the order made by, him from the files of the court. This was unauthorized. The law requires the clerk of the civil district court to enter upon the docket "every proceeding as the same is had." Act 136, of 1880, Sec. 6. And it is not a sufficient answer to

this to say that the purpose intended to be accomplished by the appointment of a receiver might be defeated if the interested party is prematurely informed of it. The same thing might be said in cases of arrest, attachment, etc., and yet the law requires the affidavit and bond in such cases to be filed before the writs issue, and the petition the next day. Moreover, whatever may be the rule elsewhere, it is established jurisprudence, here, that a receiver is not to be appointed in any case, without previous notice to the parties who may be interested in opposing such appointment. (See State *ex rel.* Brittin vs. City and other cases heretofore cited).

For these reasons, and whilst we fully appreciate the motives of our learned brother of the district court, we are constrained to hold that the order appointing the receiver, and the manner of its making, were unauthorized by law. It is, therefore, ordered, adjudged, and decreed that the rule *nisi* herein issued be made absolute, and that the respondent be prohibited from further proceeding in the matter of the receivership of which the relator complains.

BREAUX, J., concurring, hands down a separate opinion.

BLANCHARD, J., dissents and hands down separate opinion giving the reasons therefor.

Rehearing refused.