### BANK OF ANDREWS et al. v. GUDGER.

#### In re CHEROKEE TANNING EXTRACT CO.

(Circuit Court of Appeals, Fourth Circuit. March 13, 1914.)

No. 1251.

1. COURTS (§ 489*)—CONFLICTING JURISDICTION—PRESUMPTION.

In a case of conflict as to jurisdiction, a state court of general jurisdiction is presumed to have jurisdiction of all matters justiciable in that state, while a United States District Court is confined to the jurisdiction expressly conferred or necessarily implied by the federal statutes.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324–1330, 1333–1341, 1372–1374; Dec. Dig. § 489.*

Conflict of jurisdiction of federal courts with state courts, see note to Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 356.]

2. BANKRUPTCY (§ 63*)—INVOLUNTARY PROCEEDINGS—ACTS OF BANKRUPT.

A suit by minority stockholders in a state court and the appointment of a receiver pursuant to Revisal N. C. 1905, § 1196, authorizing suits to dissolve a corporation which is in imminent danger of insolvency, and section 1219, authorizing the appointment of a receiver for such a corporation, did not entitle creditors to relief in the bankruptcy court until the corporation became insolvent and committed an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 63.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

212 F.—4

3. BANKRUPTCY (§ 20*) — CONFLICTING JURISDICTION OF COURTS OF BANK-
    RUPTCY AND STATE COURTS.
        The pendency of a suit in a state court for the dissolution of a corpo-
    ration, instituted by minority stockholders, and the possession of the cor-
    porate property by a receiver appointed therein, did not deprive creditors
    of their right to have the corporate assets brought into the bankruptcy
    court for administration there, where they duly asserted that right and
    had the corporation declared bankrupt as soon as it was known to be in-
    solvent and had committed an act of bankruptcy, though the receiver was
    appointed more than four months before the filing of the petition; as
    stockholders could not acquire through the receiver or otherwise any lien
    or other claim not subordinate to the rights of creditors.
        [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig.
    § 20.*]

4. BANKRUPTCY (§ 20*)—CUSTODY OF PROPERTY—ADVERSE HOLDING.
        A receiver of a corporation appointed by a state court in behalf of, or
    at the instance of, stockholders could not hold the corporate property ad-
    versely to the receiver in bankruptcy claiming on behalf of the creditors.
        [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig.
    § 20.*]

Petition for Revision of Proceedings of the District Court of the
United States for the Western District of North Carolina, at Ashe-
ville, in Bankruptcy; James E. Boyd, Judge.

In the matter of the Cherokee Tanning Extract Company, bank-
rupt. On petition by the Bank of Andrews and another to superin-
tend and review an order requiring A. A. Fain, a receiver appointed
by a state court, to turn over the property of the bankrupt to Vonno
L. Gudger, receiver. Order affirmed.

Donald Witherspoon, of Murphy, N. C. (James H. Merrimon, of
Asheville, N. C., and Witherspoon & Witherspoon, of Murphy, N. C.,
on the brief), for petitioners.

Alf. S. Barnard, of Asheville, N. C., and W. D. Payne, of Charles-
ton, W. Va. (Stevens & Anderson and Merrick & Barnard, all of
Asheville, N. C., and Payne, Minor & Bouchelle, of Charleston, W.
Va., on the brief), for respondent.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. [1] This petition to superintend and re-
vise in the bankruptcy of Cherokee Tanning Extract Company pre-
sents to the court a delicate matter of conflict between the superior
court of the state of North Carolina and the District Court of the
United States for the Western District of North Carolina. In ac-
cordance with the accustomed dignity and decorum of the federal
and state courts in such a condition, the judges of the courts con-
cerned have asserted their convictions of judicial duty with the ut-
most courtesy and consideration for each other, leaving the differences
to be settled by appellate courts in the manner provided by law. This
court enters upon the consideration of the questions involved giving
full force to the law that the superior court of North Carolina is a
court of general jurisdiction and that the presumption is therefore
in favor of its jurisdiction as to all matters justiciable in that state,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

while the District Court of the United States is confined to the jurisdiction expressly conferred or necessarily implied by federal statutes. Case of the Sewing Machine Companies, 85 U. S. (18 Wall.) 553, 557, 21 L. Ed. 914.

The material facts are not in dispute. Cherokee Tanning Extract Company, a corporation organized in 1902 under the laws of North Carolina, was engaged in the manufacture of tanning extracts in that state. By a summons dated April 21, 1913, and a complaint verified April 30, 1913, W. C. Barker, W. J. Dingledine, Henry A. Walker, and W. S. Barker, as minority stockholders of the corporation, brought their action in the superior court of North Carolina for the county of Cherokee against the corporation and H. N. Gitt, W. P. Stine, and Frank W. Hunt, setting out in the complaint many acts tending to show fraudulent mismanagement of the company by the majority of the stockholders and the board of directors for the purpose of depreciating the stock in furtherance of an alleged plan to purchase the stock at a low price to the great injury of the minority stockholders. The caption of the complaint included as plaintiffs those above named "and all others, the stockholders and creditors of the Cherokee Tanning Extract Company who will come in and make themselves parties and contribute to the cost of the suit." There was also an allegation in the complaint that the action was brought for the benefit of the plaintiffs and all creditors and stockholders who would come in and make themselves parties to the suit and contribute to the expenses. Insolvency at the time the action was brought was negatived by the following allegation as to the danger of future insolvency:

"Plaintiffs repeat and reaffirm their allegation that the defendant Cherokee Tanning Extract Company is in imminent danger of becoming insolvent unless this honorable court should intervene and prevent the carrying out of the unlawful and fraudulent agreements entered into between the said Gitt and Hunt, which agreements constitute acts of wrongful oppression of the minority stockholders and ought not to be allowed. They reassert and reaffirm the liabilities of said Gitt and Stine on account of their alleged misconduct, and they respectfully submit to the court that a receiver to take charge of and wind up the affairs of the corporation is the only salvation for the minority stockholders and for the creditors of said company."

The prayer for relief was as follows:

"Wherefore plaintiffs demand judgment that a receiver be appointed to at once take charge of all the property and effects of the Cherokee Tanning Extract Company; that said receiver, if it shall be determined that these plaintiffs cannot do so, be directed to at once assert in this action, or a proper one to be begun for the purpose, a liability against the said H. N. Gitt and W. P. Stine and Frank W. Hunt on account of said acts; that said receiver be authorized and directed to at once sell all of the manufactured product of the said defendant company at market price for cash; that he be authorized to use up only the material on hand in the manufacture of extract and that it be sold at the market price; that said receiver take charge of all the property and effects of every kind, including choses in action; that the same be sold upon such terms as the court may direct, said choses in action collected; and that all the property and business of the Cherokee Tanning Extract Company shall be sold out and the proceeds thereof applied, under the order of this court, as the law directs; for the costs of this action and for such other and further relief in the premises as to the court may seem to be just."

On May 5, 1913, Hon. Henry P. Lane, judge of the superior court sitting in Cherokee county, made an ex parte order appointing J. Q. Barker receiver to take charge of the corporate property, under a finding by the court recited in the order that the corporation "is being mismanaged and is in imminent danger of becoming insolvent," and that suit should be brought on behalf of the corporation against the defendants, Hunt, Gitt, and Stine, on account of their alleged misconduct of the affairs of the corporation. The order required the defendants to show cause at a future day why a permanent receiver should not be appointed. Barker, the receiver appointed by the court, took charge of the property under the order. The complaint was afterwards amended in particulars not important to this controversy. The defendant corporation and Gitt and Stine demurred and answered, and by the answer put in issue the material allegations of the complaint, specifically denying that the corporation was in imminent danger of insolvency, unless it should be made so by the action instituted by the plaintiffs.

A motion made by the defendants to discharge the receivership was heard by Hon. G. S. Ferguson, judge presiding at the November term, 1913, of the superior court for Cherokee county. The motion was refused in an order containing the following as the reason for the refusal:

"* * * The court adjudges that it is apparent that the majority stockholders have combined together to control the affairs of the corporation, the Cherokee Tanning Extract Company, and have undertaken in an illegal and unauthorized manner to force the minority to sell their stockholdings at a price to be fixed by the majority, and to exclude the minority from any voice or participation in the management of the affairs of the corporation, and to control the corporation, as they see fit, and have mismanaged the affairs of the corporation, and have done other things which make it apparent to the court that it is impossible that the corporation should longer exist and carry on its business and that a sale of its assets and winding up of its affairs, including the payment of its debts, is all that remains to be done."

In the meantime on September 25, 1913, the stockholders of the corporation by resolution admitted its inability to pay its debts caused by the differences between its stockholders; and thereafter on September 30, 1913, Kanawha Valley Bank and two other creditors filed their petition in the District Court of the United States for the Western District of North Carolina in which they alleged that the Cherokee Tanning Extract Company had committed an act of bankruptcy by the resolution of the stockholders and directors admitting its inability to pay its debts, and prayed that the corporation be adjudged an involuntary bankrupt. The corporation answered by H. N. Gitt, president, admitting the allegations of the petition and consenting to the adjudication; and on October 7, 1913, the referee in bankruptcy made the adjudication. Other creditors were allowed, at their own request, to become parties and join in the petition by order of the District Judge, and on October 28, 1913, the District Judge adjudged the corporation bankrupt. J. Q. Barker, the temporary receiver, and A. A. Fain, who had been appointed permanent receiver by the state court, and J. Q. Barker, and Andrews Lumber Company, styling themselves creditors of the bankrupt corporation, appeared in the bank-

ruptcy proceedings by answer filed November 7, 1913, setting up the proceedings in the state court, the appointment of the receivers, and possession of the property by Fain as receiver under order of that court. Depending on the proceedings in the state court, these parties moved before the District Judge to set aside the adjudication in bankruptcy. The motion was denied by order dated November 7, 1913. On November 10, 1913, the District Judge made an order appointing Vonno L. Gudger receiver, directing him to take possession of the property of the bankrupt corporation, and restraining the receivers of the state court and the Bank of Andrews from disposing of the property in their hands. This order was exhibited to the judge presiding in the superior court for Cherokee county, who refused to order a delivery of the property to the bankruptcy receiver. Demand for possession was then made by Gudger as receiver in bankruptcy and refused by the receivers appointed by the state court. Thereupon on November 14, 1913, the District Judge made an order requiring the receivers appointed by the state court to show cause why they should not be required to turn over the property. Upon hearing the return, which contained all the proceedings in the state court, the District Judge held it to be insufficient; and on December 15, 1913, ordered Fain, the permanent receiver, to turn over the corporate property to Gudger, the receiver appointed by the federal court. Gudger as receiver was directed to present the order to the judge of the superior court for Cherokee county with the request that Fain be directed to turn over the property to him as receiver appointed by the bankruptcy court.

The petition to superintend and revise by setting aside the order of the District Judge restraining Fain, the receiver appointed by the state court, from disposing of the property of Cherokee Tanning Extract Company and requiring him to turn it over to Gudger, the receiver appointed by the bankruptcy court, rests on the proposition that the bankruptcy court could not interfere with the custody of the receiver of the state court for these reasons:

First. The state court had acquired jurisdiction of the parties and the property which was the subject of this action more than four months before the adjudication in bankruptcy.

Second. The state court, having the property in custody when the bankruptcy proceedings were instituted, had a right to retain and administer the property as a court of concurrent and co-ordinate jurisdiction, as a matter of right and not merely upon the principle of comity.

Third. Even if the bankruptcy court had the right to the custody of the property for administration in bankruptcy, it could only acquire the custody by a plenary suit instituted by the receiver as trustee in bankruptcy.

Fourth. The state court having refused to recognize the jurisdiction of the bankruptcy court, its judgment in doing so was binding upon all parties until reversed on appeal.

[2] It is important to observe that the order of the District Court adjudicating the Cherokee Tanning Extract Company a bankrupt has

not been brought up for review, and that adjudication must therefore stand in this proceeding as conclusive on all parties. On the other hand, there can be no doubt that the state court had jurisdiction as to the action brought by the minority stockholders to dissolve the corporation and wind up its affairs because of the abuse of its corporate powers to the injury of its stockholders and because of the imminence of insolvency alleged in the complaint presented to that court. Revisal of North Carolina, § 1196. As an incident to the suit for dissolution, the state court had also the power to appoint a receiver under section 1219 of the Revisal. When the suit for these purposes was instituted in the state court, it had exclusive jurisdiction, for insolvency was negatived by the complaint and answer, and the jurisdiction of the bankruptcy court depends on insolvency.

The complaint in the state court purported in its caption and in its allegation to be for the benefit of stockholders and of creditors who might come in and contribute to the expense; but no creditor was made a party, nor has any creditor acquired any right or set up any claim in the state court. Nevertheless if the corporation had remained solvent, the state court would have had exclusive jurisdiction to convert the corporate assets into cash and settle the claims of creditors, and the creditors could not have sought payment in any other tribunal.

From these considerations as to which, it seems to us, there can be no difference of opinion, it is evident that the bankruptcy court had no jurisdiction, and it was impossible for the creditors to avail themselves of the relief provided for them in the federal bankruptcy statute until the corporation became insolvent, and committed an act of bankruptcy more than four months after the commencement of the action and the appointment of a receiver by the state court.

[3] The case then comes to this: Does the pendency of a suit in a state court instituted against a corporation by stockholders for the protection of their rights, and the possession of the corporate property by a receiver appointed in such suit, deprive creditors of the corporation of the superior right conferred on them by the federal statute to have the corporate assets brought into the federal court for administration under an adjudication in bankruptcy when they have duly asserted the right and had the corporation declared bankrupt as soon as it was known to be insolvent and had committed an act of bankruptcy? It seems clear that to this question there can be only a negative answer. An affirmative answer would mean that the stockholders of a corporation or the members of a partnership could at their will deprive creditors of the right conferred upon them by the federal statute to have the property of an insolvent debtor administered by the bankruptcy court.

Such a case is entirely apart from those cases in which a creditor has gone into the state court and established or acquired by his suit a legal or equitable lien on the property in the hands of the court four months before the filing of the petition in bankruptcy. In such cases the courts have held that the creditor is entitled to enforce his lien in the first court that acquired jurisdiction. The distinction is also

evident between this case and those cases where the state court held the property by its receiver, and there was no question of the subsequent coming into existence of facts giving rise to the right to invoke the exclusive jurisdiction of the federal court.

[4] There is no support for the claim that this is a case of adverse possession by the receiver of the state court, for there could be no adverse possession of the corporate property in behalf of or at the instance of stockholders of an insolvent corporation against the receiver in bankruptcy claiming on behalf of creditors.

The fact that the receiver was appointed by the state court more than four months before the filing of the petition cannot affect the matter, for creditors were not before the state court and had not acquired any lien on the property; and stockholders, in the nature of things, could not acquire through the receiver or otherwise any lien or other claim that was not subordinate to the right of creditors to have the estate administered in bankruptcy for their benefit.

In all this, however, we have only set out the principles and the rule thus tersely and conclusively stated by Chief Justice Fuller in the case of In re Watts, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933:

"The New Albany Trust Company was appointed receiver of the property of Zier & Co. under section 1245 of the Revised Statutes of Indiana, Thornton's Rev. Stat. of 1897, providing that this might be done, 'when a corporation has been dissolved, or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights'; and it was directed to complete unfinished contracts but to make no new ones. The winding up of the business was contemplated and entered upon. Whether the transfers of $3,100 and $9,600 could have been overhauled in that suit we need not inquire, as they were undoubtedly acts of bankruptcy, and as such justified the application to the bankruptcy court. And the operation of the bankruptcy laws of the United States cannot be defeated by insolvent commercial corporations applying to be wound up under state statutes. The bankruptcy law is paramount, and the jurisdiction of the federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive. Necessarily when like proceedings in the state courts are determined by the commencement of proceedings in bankruptcy, care has to be taken to avoid collision in respect of property in possession of the state courts. Such cases are not cases of adverse possession, or of possession in enforcement of pre-existing liens, or in aid of the bankruptcy proceedings. The general rule as between courts of concurrent jurisdiction is that property already in possession of the receiver of one court cannot rightfully be taken from him without the court's consent, by the receiver of another court appointed in a subsequent suit; but that rule can have only a qualified application where winding up proceedings are superseded by those in bankruptcy as to which the jurisdiction is not concurrent. Still it obtains as a rule of comity, and accordingly the receiver of the District Court brought his appointment to the knowledge of the Floyd Circuit Court and requested the delivery of the assets."

Our conclusion is that under the facts here appearing the jurisdiction of the state court over the property in the hands of its receiver came to an end by the adjudication in bankruptcy; that thereafter Fain, as receiver, had no authority to sustain his custody of the property; and that the District Judge was right in ordering it to be turned over to the receiver in bankruptcy, and in directing that the order be presented to the judge of the state court for his consideration. The judgment of the District Court is affirmed.

Affirmed.