## GRIFFIN et al. v. LENHART et al.

## In re SEMANS.

(Circuit Court of Appeals, Fourth Circuit. April 17, 1920.)

No. 1730.

**1. Bankruptcy ⬤⟳217(3)—State court has jurisdiction to enforce attachment liens established more than four months prior to bankruptcy.**

Where attachments were issued by a state court, levied on lands, judgments rendered for plaintiffs, and their attachment liens established, more than four months before bankruptcy of defendant, the jurisdiction of the state court to enforce the liens cannot be interfered with by the bankruptcy court.

**2. Bankruptcy ⬤⟳217(3)—Liens which state court has exclusive jurisdiction to enforce.**

Where a state court has obtained complete jurisdiction by hostile proceedings, which creditors have instituted for the enforcement of their demands, and in which creditors have acquired liens on property more than four months before the filing of the petition in bankruptcy, the disposition of the property for payment of the liens should be left to the state court, without interference from the court of bankruptcy.

Appeal from the District Court of the United States for the Northern District of West Virginia, at Wheeling, in bankruptcy; Alston G. Dayton, Judge.

In the matter of Isaac W. Semans, bankrupt; C. E. Lenhart, W. W. Parshall, and Frederick G. Kay, trustees, etc. Lily M. Griffin, as committee for Sheridan R. Griffin, an insane person, and others appeal from an order of the District Court. Reversed.

See, also, 266 Fed. 675.

M. G. Sperry and George M. Hoffheimer, both of Clarksburg, W. Va. (R. S. Douglass and E. Bryan Templeman, both of Clarksburg, W. Va., on the brief), for appellants.

John J. Coniff, of Wheeling, W. Va. (E. C. Higbee, of Uniontown, Pa., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. A petition in bankruptcy was filed against Isaac W. Semans in the District Court for the Western District of Pennsylvania May 29, 1917, and he was adjudicated bankrupt July 31, 1917. A petition was also filed against Josiah V. Thompson in the same court August 20, 1917, and he was adjudicated bankrupt September 10, 1917. Ancillary proceedings were instituted in the District Court for the Northern District of West Virginia, where both bankrupts had property. About two years prior to the adjudication of Semans and Thompson as bankrupts, the several appellants obtained, in chancery suits brought by them, respectively, in the circuit court of Harrison county, W. Va., attachments against the property of Semans, and, except in the cases of Supler and the Empire National Bank, against the property of Thompson. These attachments were levied on tracts of

land owned by Semans and Thompson, situated in various counties in West Virginia. The orders of attachment were duly returned, notice of lis pendens filed, and the attachment suits proceeded to decrees that Semans and Thompson were indebted to the respective appellants (except Supler, John W. Brown, Buena W. Brown, and Empire National Bank) in the sums of money ascertained by the court, with interest and costs, that property had been attached as above mentioned, and that the respective appellants were entitled to have the property so attached, or so much thereof as might be necessary for that purpose, sold to pay the debts so ascertained, with interest and costs. The court did not order or decree the sale of the attached property, but of its further directions and decrees in the premises the court took time to consider.

On May 10, 1917, the above-mentioned decrees having been entered by the state court, all the appellants and the other attachment creditors of Thompson in that court (except one William Morgan) moved that all the attachment suits be heard together, and that all of the causes be referred to a commissioner in chancery to ascertain and report all of the attached property and the liens thereon. After argument, the circuit court took time to consider the motion. This motion is still pending and undetermined, because of the pendency of several consecutive injunction writs. As to these injunction proceedings it is only necessary to say that they have been dismissed, and that until they were dismissed they prevented further proceedings in the attachment suits.

On January 21, 1919, C. E. Lenhart, Frederick G. Kay, and W. W. Parshall, trustees of the estate of Semans, bankrupt, filed a petition in the United States District Court for the Northern District of West Virginia, setting forth an agreement entered into between themselves and J. M. MacDonald for the sale at a valuation of $800 an acre of the undivided one-half interest of Semans in a tract of coal land located in Harrison county, W. Va., which was included in the attached property of Semans. The trustees asked in their petition that the agreement for sale to MacDonald be ratified and confirmed, alleging that the property of Semans within the jurisdiction of the court greatly exceeded in value the amount of liens and incumbrances against it and that it was advantageous to consummate the sale.

On February 18, 1919, the appellants in this case filed jointly a motion in the District Court to dismiss the petition of the trustees and an answer thereto, setting forth in their answer that under proceedings in the circuit court of Harrison county the attachments had been levied more than four months prior to the filing of petition in bankruptcy, and that that court had acquired prior and exclusive jurisdiction over the property of the bankrupt for the enforcement of the attachment liens by sale. On March 29, 1919, the District Court overruled the motion to dismiss, and ordered the consummation of the sale to MacDonald. The decree directed that the sale be free of all the attachment liens, which liens were transferred to the purchase price subject to such defenses as might be made against them. This ruling we are asked to review.

[1] In brief, the case is this: Under attachment liens acquired in the state court on the land more than four months before the filing of the petition in bankruptcy, the state court, in equitable proceedings instituted by creditors to enforce the attachments more than four months before the filing of the petition, had adjudged the amounts due and was proceeding to enforce the attachment liens by sale of the land. The question is whether the court of bankruptcy should by the order appealed from take the control of the attached property from the state court.

Doubtless it might have been held with strong reason that the court of bankruptcy upon adjudication drew to itself for the purpose of administration all the assets and liabilities of the bankrupt of every form, giving, however, full effect to all liens lawfully acquired more than four months before the filing of the petition. But the Supreme Court, considering the reasons stronger for a different view, laid down the general rule that, where a state court has obtained complete jurisdiction by proceedings, either legal or equitable, instituted by creditors for the enforcement of their demands, and under which they have acquired liens upon the property more than four months before the filing of the petition, the state courts should proceed with the enforcement of the liens and a final disposition of the property and of the cause without interference from the bankruptcy court. Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403; Pickens v. Dent, 106 Fed. 653, 45 C. C. A. 522 (4th Circuit); Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122; Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128. The authority of Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122, is recognized, and the distinction between an attachment or any other liens created more than four months before the filing of the petition and one created within the four months period, is restated in Clarke v. Larremore, 188 U. S. 486, 23 Sup. Ct. 363, 47 L. Ed. 555; Globe Bank & Trust Co. v. Martin, 236 U. S. 288, 35 Sup. Ct. 377, 59 L. Ed. 583; Stellwagen v. Clum, 245 U. S. 605, 38 Sup. Ct. 215, 62 L. Ed. 507; New River Coal Land Co. v. Ruffner Bros., 165 Fed. 881, 91 C. C. A. 559 (4th Circuit); Bank of Andrews v. Gudger, 212 Fed. 49, 128 C. C. A. 505 (4th Circuit); Blair v. Brailey, 221 Fed. 1, 136 C. C. A. 524. The rule stated is in no wise affected by In re Watts, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933. In that case, under a bill filed in the state court about December 28, 1902, by a creditor alleging the insolvency of Zier & Co., a receiver was appointed, and creditors were called in and enjoined from bringing other actions. About a month after February 6, 1903, the petition in bankruptcy was filed by a creditor, and a receiver appointed by the federal court. The proceedings by which the state court acquired custody were begun, and the lien of creditors on the assets by virtue of the proceedings therein accrued within four months of the filing of the petition. The court, in holding that the property should be surrendered to the bankruptcy court, said:

"The bankruptcy law is paramount, and the jurisdiction of the federal courts in bankruptcy, where property involved in the administration of the affairs of insolvent persons and corporations, is essentially exclusive."

266 F.—43

But the case decides nothing as to the effect of the lien of an attachment or the appointment of a receiver in a state court more than four months before the filing of the petition in bankruptcy.

In United States Fidelity Co. v. Bray, 225 U. S. 205, 32 Sup. Ct. 620, 56 L. Ed. 1055, nothing more was decided than that the bankruptcy court had exclusive jurisdiction of questions arising in that court and of the disposition of funds in its hands, and that it had no power to direct the determination of these matters in a separate suit.

In Commercial T. & S. Bank v. Busch-Grace Co., 228 Fed. 300, 142 C. C. A. 592, the trust deed involved, considered as a general assignment, was executed December 31, 1914. On January 6, 1915, unsecured creditors filed a bill under a state statute in a state court, charging insolvency, praying receivership and distribution of assets among creditors. The state court had ordered a reference to ascertain creditors, but had not taken custody, by receiver or otherwise, of property when the petition in bankruptcy was filed June 2, 1915. It was held that the bankruptcy court had exclusive jurisdiction, for the distinguishing reason that the proceedings in the state court, under the law of Tennessee, did not constitute a lien; that there was no prior lien and no custody of the property by the state court. Thus the court expressly distinguished the case from Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128 and Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122.

In Union Electric Co. v. Hubbard, 242 Fed. 248, 155 C. C. A. 88, this court expressed the view that, even when the conditions exist under which the court of bankruptcy could remove the assets from the state court, it would decline to do so when it was perfectly evident that no benefit could result to creditors. This was on the ground that a court should not exercise its power to do a futile thing.

[2] We shall not undertake the hopeless task of reconciling the apparently conflicting reasoning of the courts in other important cases bearing on the subject. We venture to think, however, that there is a distinction under which the cases relied on by appellees will, in actual adjudication, turn out to be entirely consistent with each other, and with all the cases above cited. It is this: Where a state court has obtained complete jurisdiction by hostile proceedings, which creditors have instituted for the enforcement of their demands, and in which creditors have acquired liens on property more than four months before the filing of the petition in bankruptcy, the disposition of the property for payment of the liens should be left to the state court, without interference from the court of bankruptcy. In such case the trustee in bankruptcy is interested only in the surplus proceeds of sale, and in having the suit in the state court pressed with due diligence.

But this rule does not apply to protective proceedings instituted in a state court. The principle of the bankruptcy statute paramount to all others is that all creditors shall have the right to a speedy winding up of the bankrupt business and distribution of the assets. No creditors can be deprived of this right by a proceeding instituted at any time in a state court by an insolvent or any of his creditors, for the purpose

of continuing his business or protecting the assets against creditors, or in any way delaying creditors. This is none the less true, although one of the objects of the creditors' proceedings in the state court be to acquire a lien, and the actual result be the creation of a lien more than four months before the filing of the petition in bankruptcy.

Protective proceedings of that nature were involved in Bank of Andrews v. Gudger, 212 Fed. 54, 128 C. C. A. 505, where creditors were not parties. In that case the court said:

"Such a case is entirely apart from those cases in which a creditor has gone into the state court and established or acquired by his suit a legal or equitable lien on the property in the hands of the court four months before the filing of the petition in bankruptcy. In such cases the courts have held that the creditor is entitled to enforce his lien in the first court that acquired jurisdiction. The distinction is also evident between this case and those cases where the state court held the property by its receiver, and there was no question of the subsequent coming into existence of facts giving rise to the right to invoke the exclusive jurisdiction of the federal court."

In Graham Mfg. Co. v. Davy-Pocahontas Coal Co., 238 Fed. 488, 151 C. C. A. 424, the same principle was involved. Though creditors were parties to the proceedings in the state court instituted more than four months before the petition in bankruptcy was filed, the main purpose was to protect the debtor or corporate stockholders against the immediate enforcement of the claims of creditors, and to carry on the business, either permanently or to convenient liquidation.

In the case now before us it appears from the record that the attaching creditors were at all times pressing the enforcement of their liens acquired in proceedings instituted in the state court more than four months before the filing of the petition in bankruptcy, in an attitude of hostility to the debtors. In such a case the state court must be allowed to carry forward to completion the enforcement of the attachment liens, without interference from the court of bankruptcy.

Reversed.