BAILEY et al. v. BLACKMON.

(Circuit Court of Appeals, Fourth Circuit. June 8, 1926.)

No. 2270.

1. Bankruptcy ⊜⇒11.

Under Bankruptcy Law, as amended in 1903 and 1910, jurisdiction of bankruptcy court in administration of affairs of insolvents under Constitution and law of United States is exclusive of all other courts.

2. Bankruptcy ⊜⇒217(½).

Federal courts may stay proceedings in state court, begun prior to proceedings in bankruptcy, and stay taking of any steps embarassing equitable distribution of bankrupt estate.

3. Bankruptcy ⊜⇒213.

State court may entertain foreclosure suit after filing of petition in bankruptcy, although title to one of junior lienors made party arose out of assignment of bankrupt.

4. Bankruptcy ⊜⇒211.

Question whether assignor of note secured by mortgage or mortgagee's trustee in bankruptcy was entitled to lien on property on which prior mortgage was being foreclosed in state court *held* within jurisdiction of court of bankruptcy.

5. Judgment ⊜⇒829(3)—Assignee of mortgage, delaying appeal in foreclosure suit until adverse decision in bankruptcy court as to validity of assignment, held bound (Code Civ. Proc. S. C. 1922, § 646, subsec. 3, and sections 640, 650).

Where state court in foreclosure suit ordered fund held pending determination in bankruptcy court of validity of bankrupt's assignment of mortgage, assignee could not delay appeal until adverse determination by bankruptcy court, and was bound by such determination, and estopped from reopening matter because of subsequent decision by state Supreme Court on appeal that foreclosure decree was res judicata, even though appeal was timely under Code Civ. Proc. S. C. 1922, § 646, subsec. 3, and sections 640, 650.

6. Estoppel ⊜⇒63.

Trustee in bankruptcy *held* not estopped by appearance in foreclosure suit in state court from further questioning validity of assignment of mortgage by bankrupt in federal court.

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

On rehearing. Judgment affirmed.

For former opinion, see 3 F.(2d) 252.

A. C. De Pass and Alfred Wallace, both of Columbia, S. C. (De Pass & De Pass, of Columbia, S. C., on the brief), for appellants.

D. W. Robinson, of Columbia, S. C. (Weston & Aycock, of Columbia, S. C., on the brief), for appellee.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WADDILL, Circuit Judge. This was one of two causes in which, on the 20th of December, 1924, we handed down an opinion reported in 3 F.(2d) 252. Shortly thereafter, Miss Bailey, the appellant and the losing party therein, by her petition for rehearing, brought to our attention for the first time, a decision of the Supreme Court of South Carolina, hereinafter fully discussed, and made shortly after the announcement of our own. In view of the conflict thereby revealed, we granted a rehearing, which has been had. The question at issue is as to the title of Miss Bailey to a bond and mortgage assigned to her by her father, C. T. Bailey, subsequently adjudicated a bankrupt.

Some time prior to his bankruptcy, he was the owner of valuable real estate in Columbia, S. C. He had given a mortgage upon it to W. J. Keenan and C. M. Asbill, and had subsequently conveyed the equity of redemption to Messrs. Luther, Bradford, and Coleman, taking from them a mortgage for part of the purchase money. One of their notes so secured was transferred by Bailey to his daughter. It, or more accurately its proceeds, are the subject-matter of the controversy with which we are now concerned.

On the 3d of September, 1921, a petition to have Bailey adjudicated a bankrupt was duly filed. Three days later, the United States District Judge for the Eastern District of South Carolina enjoined Bailey, his daughter, the appellant herein, and Bailey's wife, from conveying, disposing of, or in any wise incumbering certain real estate in Georgia and in or near Columbia, S. C., theretofore conveyed by Bailey. On the 2d of November, he was duly adjudicated a bankrupt. On the day before this adjudication, but almost two months after the filing of the petition in involuntary bankruptcy and the issuance of the injunction referred to, Messrs. Keenan and Asbill, the holders of the first mortgage upon the Columbia property, already mentioned, filed in the state court their bill for its foreclosure, and on the 18th of November followed it up with an amended bill, by which they added Miss Bailey and O. C. Blackmon, Jr., the trustee, as defendants to Bailey and others who were the re-

spondents named in the original bill. Before the end of the month, service of process was had upon all three. They all answered; the bankrupt's trustee contenting himself with saying that he had neither knowledge nor information sufficient to form a belief as to the allegations of the complaint other than those which set forth Bailey's adjudication and his appointment as trustee. Miss Bailey's answer set up the assignment to her of the bond in dispute and prayed judgment for it out of the proceeds of sale. The state court referred the case to a master, to take testimony and to report. This was an wholly uncontested proceeding. In it the bankrupt testified that he was solvent at the time he had made his assignment to his daughter. On the 4th of February, 1922, the master reported that the assignment was valid and recommended judgment in favor of Miss Bailey for the amount of the bond. This recommendation was on the 15th of February, confirmed by the court in a decree to which all the parties, including the trustee in bankruptcy, consented, and in which an attorney's fee of $200 was allowed counsel representing Miss Bailey. The decree directed the sale of the mortgaged premises and the distribution of the proceeds among the parties interested, including Miss Bailey and her counsel, in accordance with their relative priorities as they had been ascertained by the master. The sale was made in the succeeding month of March and in due course was confirmed. The purchase money was paid and on the 16th of May, the master filed his report of sales and disbursements, in which he showed that there was coming to Miss Bailey $2,217.86, in which was included the $200 allowed her lawyers. On the same day Miss Bailey filed a petition, setting forth that she had become of age, and asking that the money should be paid to her in her own right. In accordance with his report, the master drew his check in her favor for the amount awarded her by the decree, and apparently sent it to her, but, in consequence of what is presently to be stated, he stopped payment upon it before it was actually cashed by her, and, so far as we are advised, it has never been paid.

On the 11th of May, that is, five days before the master had filed the report last mentioned, the trustee in bankruptcy had duly instituted this plenary suit in the United States District Court for the Eastern District of South Carolina. In it he sought to have set aside the assignment from the bankrupt to his daughter. On the 17th of that month, the trustee through his counsel served upon the master a copy of his bill in the United States

court, and requested him not to pay the money to Miss Bailey until the controversy was determined. In consequence of this notice, the master on the same day stopped the payment of the check as before mentioned. On the 18th, he reported the matter to the court. On the 19th the trustee in bankruptcy filed a verified petition in the state court, setting forth, among other things, that the bankrupt was examined before the referee in January, 1922, that it was then for the first time ascertained that he had assigned the bond and mortgage to his daughter, that, when the trustee subsequently filed his formal answer in the foreclosure case, he did not realize that it concerned this bond and mortgage, and overlooked the facts in regard to the validity of their assignment, which he averred was voluntary and fraudulent, and that on the 11th of May, he had begun an action in the federal court to have it set aside. He petitioned the court to impound the funds payable to Miss Bailey until the validity of the assignment to her could be inquired into, or, in the alternative, that the case should be reopened and he be permitted to attack its validity in the main cause in the state court. On the 2d of June, Miss Bailey, in the United States court demurred, on jurisdictional and other grounds, to the bill there pending, and also filed therein her answer upon the merits.

On the 17th of June the state court entered a decree in which it was stated "that the matters now attempted to be raised and the issues to be presented in the suit in bankruptcy court between O. C. Blackmon, Jr., trustee in bankruptcy, and Dorothy Bailey, both of whom are defendants in this action, were not before this court in this case, and could not have been decided in the decree rendered in this case. * * * Under the principles recognized in Farrar v. Haselden, 9 Rich. Eq. (S. C.) 331, the funds in the hands of said master, heretofore adjudged in this action to be paid to said guardian, should be held by the master pending the determination of the question whether or not said trustee in bankruptcy is entitled to said fund on the grounds stated in his bill of complaint in the suit brought," by him in the United States court as a court of bankruptcy, "and until that question is determined in that court." Eleven days later, on June 28th, Miss Bailey gave notice of her intention to appeal from this order, but for some twenty months thereafter, did nothing to perfect it. During that time the action instituted by the bankrupt trustee in the United States District Court was regularly and earnestly prosecuted and as vigorously defended; Miss Bailey there

appearing and taking an active part in the controversy without, so far as the record discloses, doing anything to advise the federal court that she proposed to go on with her state appeal. All questions of law and fact were fought out in the case, with the result that the court, on the 12th of December, 1923, entered a decree in which, upon abundant and indeed conclusive evidence, it found that the bankrupt's assignment of the bond and mortgage which purported to be dated the 15th of May, 1920, had been fraudulently antedated and in fact had not been executed and delivered until January, 1921; that it was an attempted voluntary donation from the bankrupt to his daughter at a time when he was insolvent, with the intent and for the purpose of hindering, delaying, and defrauding his creditors; that the assignment was therefore invalid, null, and void, as against then existing creditors, some of whom were still unpaid; and that the plea on behalf of Miss Bailey that the creditors are now estopped from claiming that she is not the true, bona fide holder of the bond and mortgage under the judgment heretofore mentioned in the state court was clearly not good. On the 16th of January, 1924, Miss Bailey appealed from such decree to this court. On the 19th of February, 1924, the gentlemen to whom the state court's decree of February, 1922, had allowed an attorney fee, asked that the master be directed to pay it. On the 7th of March, 1924, the court refused their request, on the ground that the application for payment should be made to the United States court. An appeal to the Supreme Court of the state was taken from this order and perfected both from it and the previous decree of June 17, 1922, so that Miss Bailey had, at the same time, pending appeals to this court from the decree of the District Court for the Eastern District of South Carolina and an appeal to the Supreme Court of South Carolina from the decree of its circuit court.

It was in the latter proceeding that the highest court of South Carolina, on December 31, 1924, eleven days after this court's decision on the merits affirming the decree of the District Court, handed down the opinion which led us to grant the present rehearing. 135 S. E. ——.

It holds that the question as to whether Miss Bailey or the trustee in bankruptcy had the better claim upon the proceeds of the bond and mortgage should have been and was properly and finally determined in her favor by the consent decree of February 15, 1922. That such decree was entered upon the admissions of the trustee, and not as a result

of any judicial inquiry into the circumstances under which she acquired apparent title, did not in its view militate against its conclusiveness. It thought that the petition of the trustee in bankruptcy, presented to the state court on the 19th of May, 1922, showed that when, on February 15th, he consented to the state court's decree, he must have had knowledge or notice of the facts upon which he subsequently based his attack upon the assignment, and consequently was not entitled to ask that such decree be set aside. On the other hand, the United States District Court for the Eastern District of South Carolina, as a result of minute and painstaking inquiry into the facts, reached what we have already said was the inescapable conclusion that her father's conveyance of the bond and mortgage to her was fraudulent and void, and that their proceeds belonged to his creditors and should go to their representative, the trustee in bankruptcy, for distribution among them.

It thus becomes apparent that the United States District Court in the state of South Carolina and the Supreme Court of that state have taken directly opposite views as to the proper disposition of the proceeds of the sale of the land applicable to the payment of the mortgage bond in question. This condition is regrettable, as manifestly each court has taken what it believed to be the correct view with the facts as understood by them, and we approach the subject of endeavoring to pass upon the difference of opinions with our brethren with much hesitancy. We feel particularly that every effort should be made to prevent an apparent jurisdictional conflict between a federal court and a state court of such prominence and well-recognized ability as the Supreme Court of South Carolina. In meeting this question, we cannot fail to be impressed with the fact that, under the decision in the United States District Court, the question of invalidity of the assignment by the bankrupt to his daughter upon full hearing, on proceedings instituted for the purpose, with all the parties before it and the evidence fully adduced, the assignment was held to be voluntary and void, and made at a time when the bankrupt was insolvent, and with the intent of hindering, delaying, and defrauding his creditors, and set the same aside, decreeing that the money arising from the assigned bond should be paid to the bankrupt's trustee; whereas, under the decision of the Supreme Court of South Carolina, rendered long since the proceeding had in the United States District Court, in a consent proceeding, and in which the validity of the

assignment was not directly questioned, the effect of that court's decree will be to pay to the holder by gift of the mortgage note, the bankrupt's daughter, and not to the bankrupt's creditors, the amount of the bond assigned.

The assignments of error relate largely to the findings of fact by the District Court of the United States; that is to say, in its holding the assignment in favor of the appellant, Miss Bailey, as fraudulent and void, made without valid consideration and to hinder, delay, and defraud creditors, and that the same was antedated with the purpose of misleading, as affecting the insolvency of the defendant. Appellants insist that the subject-matter of the appeal was res adjudicata, and that appellee was estopped from questioning the exclusive jurisdiction of the state court with respect to the litigation in question. These assignments are largely determinable by the viewpoint from which the two courts, state and federal, shall consider the subject of their jurisdiction; that is, whether under the circumstances they shall be treated as having concurrent jurisdiction with respect to the subject-matter involved, or whether the jurisdiction of the bankruptcy court should be deemed exclusive of that of the state court.

[1] In the early stages of the bankruptcy law, prior to the amendments of 1903 and 1910, just what the status of the two courts was, and whether they were not entirely controlled by rules of comity, were subjects of much consideration. Bardes v. Bank, 178 U. S. 524, 20 S. Ct. 1000, 44 L. Ed. 1175; Metcalf v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122; Pickens v. Roy, 187 U. S. 177, 23 S. Ct. 78, 47 L. Ed. 128. Since the rendition of these decisions, however, and the amendments to the Bankruptcy Act, especially that of 1903, the position of the bankruptcy court seems to have been definitely settled, in this, that, while the rules with respect to comity between the courts shall be respected where the same can be done without violence to the rights of the bankrupt estate and its creditors, nevertheless the jurisdiction of the bankruptcy court in the administration of the affairs of insolvents, under the Constitution and laws of the United States, is exclusive of all other courts. In a decision of the Supreme Court of the United States (In re Watts, etc., 190 U. S. 1, 23 S. Ct. 718, 47 L. Ed. 933), rendered almost immediately following the amended Bankruptcy Act of February 5, 1903, an important and leading case, the question of the exclusive jurisdiction of the bankruptcy court and the control of the estates of bankrupts was recognized as above stated, and, at page 27 (23 S. Ct. 724), Chief Justice Fuller, speaking for the court, said:

" * * * The bankruptcy law is paramount, and the jurisdiction of the federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive. Necessarily when like proceedings in the state courts are determined by the commencement of proceedings in bankruptcy, care has to be taken to avoid collision in respect of property in possession of the state courts. Such cases are not cases of adverse possession, or of possession in enforcement of pre-existing liens, or in aid of the bankruptcy proceedings. The general rule as between courts of concurrent jurisdiction is that property already in possession of the receiver of one court cannot rightfully be taken from him without the court's consent, by the receiver of another court appointed in a subsequent suit, but that rule can have only a qualified application where winding up proceedings are superseded by those in bankruptcy as to which the jurisdiction is not concurrent."

In this case, however, the court recognized that, in cases involving the disposition of assets in the hands of state courts after bankruptcy, comity would suggest the bringing to the attention of the state courts the action of the federal court and a request for delivery of the assets. See, also, Whitney v. Wenman, 198 U. S. 539, 552, 25 S. Ct. 778, 49 L. Ed. 1157; Bryan v. Bernheimer, 181 U. S. 188, 21 S. Ct. 557, 45 L. Ed. 814; Mueller v. Nugent, 184 U. S. 1, 22 S. Ct. 269, 46 L. Ed. 405. In a later case (United States Fidelity Co. v. Bray, 225 U. S. 205, 32 S. Ct. 620, 56 L. Ed. 1055), an appeal from this court, the position of the court in the Watts Case, supra, is amplified and more distinctly stated at page 218 (32 S. Ct. 625) as follows:

" * * * These matters are rightly subjects for proceedings in bankruptcy, and therefore fall within the exclusive jurisdiction of the court of bankruptcy. A distinct purpose of the Bankruptcy Act is to subject the administration of the estates of bankrupts to the control of tribunals clothed with authority and charged with the duty of proceeding to final settlement and distribution in a summary way, as are the courts of bankruptcy. Creditors are entitled to have this authority exercised, and justly may complain when, as here, an important part of the administration is sought to be effected through the slower and less appropriate processes of a plenary suit in equity in another court, in-

volving collateral and extraneous matters with which they have no concern, such as the controversy between the complainant and the indemnitor banks." Collett v. Adams, 249 U. S. 545, 550, 39 S. Ct. 372, 63 L. Ed. 764. [2] The decisions of the Circuit Courts of Appeals and of the District Courts under the bankruptcy law as amended, as above stated, have with one accord followed the decisions of the Supreme Court last given. Those from this circuit only will be cited, in which it is made plain that the jurisdiction of the federal courts in bankruptcy is exclusive in the administration of the affairs of bankrupts, and that such courts may stay proceedings in a state court begun prior to proceedings in bankruptcy, and indeed stay the taking of any steps embarrassing to the equitable distribution of the estate of a bankrupt. New River Coal Land Co. v. Ruffner Bros., 165 F. 881, 886, 887, 91 C. C. A. 559; Bray v. U. S. Fidelity & Guaranty Co., 170 F. 689, 697, 698, 96 C. C. A. 9; Virginia Iron, Coal & Coke Co. v. Olcott, 197 F. 730, 117 C. C. A. 124; Bank of Andrews v. Gudger, 212 F. 49, 128 C. C. A. 505.

[3, 4] To prevent misapprehension, it should be stated that nothing in what has been said in any way questions the right of the state court to entertain the foreclosure suit, in spite of the fact that it was begun nearly two months after the filing of the petition in bankruptcy. The right of the mortgagees in it to enforce their lien was not affected by the fact that the title to one of the junior lienors arose out of an assignment of the bankrupt. It may also be admitted that when the state court in the foreclosure proceedings took possession of the mortgaged property, put it up for sale, and took the proceeds into its hands, it was by the ordinary rules of law bound to hear any one who claimed to be interested in them. If there were conflicting claims upon any part of the funds, it ordinarily had jurisdiction to pass upon them. and, without its consent, no court of merely concurrent jurisdiction could in any wise interfere. The question of whether Miss Bailey or the trustee in bankruptcy had the better claim to the third lien on the property in process of foreclosure was, however, altogether separable from every other question in the case. It was one which in its nature would ordinarily have been within the jurisdiction of the court of bankruptcy. Moreover, before the institution of the suit in the state court, the court of bankruptcy had begun its inquiry into some of the conveyances from the bankrupt to his daughter, and in addition had issued its injunction to prevent the

alienation of the property dealt with in them.

It is true that at the time the trustee supposed that all that was involved was some real estate in Georgia, but it subsequently turned out that there was a common purpose and intent running through these deeds and the assignment of the mortgage with which we are presently concerned. There can be no question that the investigation of all the circumstances could be made by a single court with greatest advantage to the cause of justice and the rights of the parties. The court of bankruptcy was the only one having jurisdiction sufficient for the purpose. No one would claim that the state court in a foreclosure suit could have attempted anything •of the kind. There was therefore much of sound sense in the action of the circuit judge in South Carolina in turning over, as he did, the question of the relative rights of the trustee and Miss Bailey to the determination of the District Court of the United States.

It is to be noted that the order of the state court, in effect remitting the inquiry to the District Court of the United States, was apparently in full force and was not in any wise superseded until after the entry of the decree in the District Court of the United States.

It is true that in the United States court Miss Bailey asserted that the issue as between her and the trustee had, by the action of the state court become res adjudicata, a contention, however, to which it was impossible for the United States court to accede, for, as the matters stood at that time, the last thing the state court had done was to ask the United States court to pass upon the dispute.

[5] We do not think that any liberality which South Carolina may show as to the time in which appeals may be taken justified Miss Bailey before going on with her appeal in waiting until she found out what the final decree of the court of bankruptcy would be. No one is entitled so to play fast and loose with the rights of others.

The right of the assignment to Dorothy Bailey was duly brought up and disposed of in the District Court of the United States, in the proceeding instituted by the bankrupt's trustee, to which answer was filed by her, and the trustee in bankruptcy insists that, having joined issue in that cause, instituted especially to test the validity of the assignment, and in which the testimony was fully taken, upon the rendition of the adverse decision to her, she was estopped and barred from reopening the same under the decision of the Supreme Court of South Carolina, rendered in the foreclosure proceeding afore-

said, made long subsequent thereto, and the respondent further says that prosecution of the appeal in that case, after the delay, in the circumstances under which the same was taken, is not binding upon him, and that he is entitled to the full benefit of the decrees entered in his behalf in the federal District Court, vacating and annulling such assignment.

The court can but feel that the appellee is entitled to the relief asked, taking into account especially the fact that there appears to be no dispute that the assignment was wholly voluntary and made as a gift by the father to the daughter, at a time when the father was insolvent; that the proceeding is one in bankruptcy, in which, at the very threshold an injunction was sought and granted to prevent the estate involved from being disposed of or hypothecated or incumbered by either the bankrupt, his wife or his daughter. Following this injunction, upon appropriate proceedings in the United States District Court, much testimony was offered and a warm and bitter contest waged, resulting in a finding of facts by the special master and the District Court fully sustaining the appellee's contention, both in respect to the law and the facts in the case, and the assignment in question annulled. During all this time the injunction awarded remained in full force and effect and does to this day.

[6] Appellant insists that the appellee, the bankrupt's trustee, is not entitled to relief herein, and that the decree of the District Court, appealed from, should be reversed, because the trustee is estopped by reason of his appearance in the foreclosure suit in the state court and consenting to the decree of foreclosure, from further questioning the transfer of the mortgage bond in question thereunder from the bankrupt, C. T. Bailey, to his daughter, Dorothy Bailey. We are not prepared to give our assent to this proposition. It is true that the bankrupt's trustee, without previous permission had for the purpose, was made a party to the foreclosure suit subsequent to the bankruptcy, and he knew of that court's so doing, and appeared and filed a formal answer in the suit without permission of the bankruptcy court, and, while his answer was formal and shows that he was without information on the subject of the suit, nevertheless he consented to a decree directing the foreclosure asked. Subsequent thereto, however, and prior to the payment of the proceeds arising from the sale apparently coming to Dorothy Bailey, he, upon discovery of the facts, instituted this proceeding in the United States District Court for the purpose of setting aside and annulling the assignment of the mortgage bond to appellant, Dorothy Bailey. This proceeding was instituted on the 11th of May, 1922, and on the 19th of May, 1922, the petition was brought to the attention of the state court in the foreclosure proceeding, with the request that the relief prayed for be afforded in that suit, or that opportunity be afforded to secure the same in the proceeding instituted in the United States District Court. On the 17th of June, 1922, Judge Townsend, in the state court, held that relief as to the fraudulent transfer of the bond to the daughter could not have been afforded in the foreclosure suit, and directed that the sum to be paid under the mortgage bond assigned be held by the officer of the state court until the validity of the transfer could be determined in this suit in the federal court brought for that purpose. Notice of appeal by appellant from the order of Judge Townsend was given, but the appeal was not prosecuted for some twenty months, and until the controversy in the federal court, after a bitter contest, had been decided in favor of the bankrupt's trustee, and this appeal therefrom had been taken. Under these circumstances, we do not consider the bankrupt's trustee estopped from making the contest, and are in accord with the ruling of the United States District Court deciding the same in his favor.

The proceedings in the state court were all started subsequent to the filing of the petition in bankruptcy (Fairbanks Shovel Co. v. Wills, 240 U. S. 649, 36 S. Ct. 466, 60 L. Ed. 841; Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 306, 307; [1] Everett v. Judson, 228 U. S. 478, 33 S. Ct. 568, 57 L. Ed. 927, 46 L. R. A. [N. S.] 154), and were had admittedly without opposition. To allow what was done by consent in this foreclosure proceeding to take precedence over a regularly contested litigation in the bankruptcy proceeding, affecting the ownership of an asset of a bankrupt estate, the title to which the trustee has indisputably shown to be vested in him, and not in the person to whom the same was awarded in that suit, would be clearly illegal, and in plain contravention of the intent and purpose of the bankruptcy law.

Respecting the prosecution of the state court appeal, as to whether the same was timely conducted, appellee cites the Code of South Carolina, 1922, vol. 1, § 646, subsec. 3, also sections 640 and 650; Rylee v. Marett, 121 S. C. 377, 378, 113 S. E. 483. We do not feel called upon to determine that question further than to say that the appeal was cer-

[1] 32 S. Ct. 96, 56 L. Ed. 208.

tainly conducted with much laxity, and in our view appellee is not estopped from asserting the right to maintain the jurisdiction of the federal courts with a view of protecting the bankrupt's estate; on the contrary, we think that the appellant, Dorothy Bailey, is estopped and bound by the action of the federal court by appearing therein and litigating her rights under the assignment of the bond and mortgage in question, and that the action of the District Court is plainly right, and should be affirmed.

Affirmed.

WOODS, Circuit Judge., who sat in the case, concurred in an affirmance of the decree appealed from, but died before the opinion was written.