HENRY FURRER ET AL., APPELLEES, v. NEBRASKA BUILDING & INVESTMENT COMPANY ET AL., APPELLANTS.

FILED JUNE 12, 1922.    No. 22213.

1.  Corporations: RECEIVERS: APPOINTMENT. "Unless expressly authorized by statute, a court has no jurisdiction to appoint a receiver of corporate property upon grounds which would not be sufficient were the owner a natural person." *Vila v. Grand Island Electric Light, Ice & Cold Storage Co.,* 68 Neb. 222.

2.  ———: ———: ———: NOTICE. Where a petition for the appointment of a receiver for a corporation shows on its face that the managing officers are not properly representing the stockholders, but are using corporate powers and corporate property for individual benefits, the appointment of even a temporary receiver without notice to the stockholders themselves is an abuse of discretion and erroneous; notice to the derelict officers, under such circumstances, not being sufficient.

3.  ———: ———: ———. Misconduct or mismanagement of corporate business by officers is not ground, at the suit of complaining

minority stockholders, for the appointment of a permanent receiver to wind up the affairs of a solvent corporation.

4. ———: ———: ———: NOTICE. Statutory notice to interested persons of an application for the appointment of a permanent receiver to wind up the affairs of a solvent corporation is jurisdictional; an appointment without such notice being void. Rev. St. 1913, secs. 7811, 7818.

5. ———: ———: ———. Proceedings under a void order appointing a receiver to wind up the affairs of a solvent corporation, at the suit of some of the stockholders without notice to the others, are void.

6. ———: ———: SALE. A receiver's sale in bulk of the property of a solvent corporation, at the suit of some of the stockholders without notice to the others, amounts to an invasion of private rights and is void.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Reversed.*

*C. C. Flansburg, Cosgrave & Campbell* and *Sterling F. Mutz,* for appellants.

*Good & Good, Boehmer & Boehmer* and *F. C. Foster,* contra.

Heard before MORRISSEY, C. J., ROSE, DEAN, ALDRICH and DAY, JJ.

ALDRICH, J.

This is a suit in equity brought by Henry Furrer, Delbert Lautzenheiser and John Peterson, owners of preferred stock in the Nebraska Building & Investment Company, against the Nebraska Building & Investment Company, the Nebraska Hotel Company, the Lincoln Security Company, Frank E. Schaaf, Edward O. Gregg, H. Louis Lohmeyer, Robert W. Johnson, James H. Gore, and Albert J. Schaaf, asking for an investigation and accounting. It is also asked that the personal defendants be temporarily restrained from unlawfully and unnecessarily expending money belonging to the various corporations; that a receiver be appointed to take charge of the business, proper-

ties, assets and affairs of the several defendant corpora-
tions and all the real estate owned or held in trust by either
of the defendants and belonging to the stockholders of the
defendant corporations; that the receiver take immediate
possession of the funds and real and personal property
and all business conducted by defendants or either of them
belonging to the stockholders of the defendant corpora-
tions, and that said defendant corporations be dissolved,
and the receiver be empowered to handle and dispose of
such assets as may come into his hands; that the personal
defendants be enjoined from further conducting and oper-
ating the business of the defendant corporations; that at
the final hearing a judgment be entered against defend-
ants Schaaf, Gregg, Gore, and Lohmeyer, in such amounts
as found due from them; and that all the assets of the sev-
eral defendant corporations, after paying the legal indebt-
edness against the same, be preserved for the benefit of
such stockholders of the defendant corporations as have
paid cash for their stock.

Service of summons was had on the Nebraska Building
& Investment Company and the Nebraska Hotel Company
by delivering in person to Frank E. Schaaf, president and
manager of each of said corporations, at their usual place
of business, true and certified copies of the writ with all
indorsements thereon.  Summons was served on the Lin-
coln Security Company by delivering in person to Frank E.
Schaaf, president and general manager of said corporation,
a true and certified copy of the writ with all indorsements
thereon.  Service was also had on Frank E. Schaaf, Ed-
ward O. Gregg, James H. Gore, H. Louis Lohmeyer and
Albert J. Schaaf.  The statutory notice of the time and
place for hearing of the application for appointment of a
receiver was served on each of the three above-named de-
fendant corporations by delivering in person to F. E.
Schaaf, president and manager of each corporation, true
and certified copies of the notice with all indorsements
thereon.  Service of the notice was also had on Frank E.

Schaaf, Edward O. Gregg, James H. Gore, H. Louis Loh-meyer and Albert J. Schaaf.

The trial court found that a receiver was necessary and appointed W. E. Barkley receiver for each of the defendant corporations. On April 4, 1921, the trial court authorized the receiver to offer for sale and to sell, subject to the approval of the court, the interest of the companies in the Fontenelle Hotel of Omaha, Nebraska, Lincoln Hotel, Capitol Hotel site, Lincoln, Nebraska, Evans Hotel, Columbus, Nebraska, Lincoln Hotel at Franklin, Nebraska, Lincoln Hotel at Table Rock, Nebraska, Lincoln Hotel at Scottsbluff, Nebraska, and also the ranch owned and operated at Kearney, Nebraska. On April 5, 1921, D. W. Osborne and Herbert Reeder, holders of preferred stock in the Nebraska Building & Investment Company and the Nebraska Hotel Company, appeared specially and challenged the jurisdiction of the court to its right and authority to appoint a receiver and to make sale of the properties, claiming, among other things, that they, and more than 900 other stockholders, were affected by the proceedings, none of whom had received notice required by law, precedent to the appointment of the pretended receiver; that they had not been made parties and were not bound by the proceedings; and also that no sufficient or proper showing had been made for the appointment of a receiver, or for a sale of the assets and the winding up of the business of the corporations. Other preferred stockholders of the Nebraska Building & Investment Co. and the Nebraska Hotel Company appeared specially to challenge the jurisdiction of the court because no notice or summons had been served upon them or either of them. The special appearances were overruled. On the same day Otto Gloe and Laura A. Walters, preferred stockholders in the Nebraska Building & Investment Company, G. H. Walters, a common stockholder in both the Nebraska Building & Investment Company and the Nebraska Hotel Company, and Maurice T. Walters, a stockholder and creditor of the Nebraska Building & Investment Company, each for himself separately

filed a motion of intervention objecting to the receiver's
bond, claiming it should be equal to double the value of
the property, as required by section 7813, Rev. St. 1913,
and moved for an order requiring a $2,000,000 bond. Otto
Gloe and others filed a motion to set aside the appointment,
and a motion resisting the sale, on the ground that it was
unnecessary to sell all the assets of the corporations be-
cause the sale of certain properties would meet all obliga-
tions. The same preferred stockholders filed a motion for
an order directing that all stockholders and creditors of
the defendant corporations be made parties defendant,
claiming that they were parties affected by the receiver-
ship proceedings, and that, without notice as provided in
section 7811, Rev. St. 1913, the proceedings were void as
to the creditors and stockholders. The same intervening
stockholders filed other motions resisting and objecting to
the proceedings, and they were all overruled by the court.

The trial court on April 16, 1921, confirmed the sale of
the hotel properties, which were sold to Eugene C. Eppley
for a total consideration of $1,000,000, and the final decree
of the court below was entered on May 25, 1921. The court
found that mismanagement and fraud had been practiced
by the officers and directors of the defendant corporations,
and that certain sums were due from certain personal de-
fendants. Judgment was entered accordingly. Otto Gloe
and others, intervening defendants, the Nebraska Building
& Investment Company, the Nebraska Hotel Company,
Frank E. Schaaf and Albert J. Schaaf have appealed from
the order of the court, (1) confirming the sale by the re-
ceiver, (2) overruling objections made to said sale, (3)
overruling the challenge to its jurisdiction and power to
either entertain the cause, appoint a receiver, order sale,
or affirm and approve the same.

It appears that the the Nebraska Building & Investment
Company, a corporation, was organized in 1914, with a
capital stock of $500,000. The incorporators were Frank
E. Schaaf, H. Louis Lohmeyer and J. R. Kruse, and they
were to act as directors of the corporation until the first

annual meeting. In December, 1917, and again in May, 1919, the articles of incorporation were amended, increasing the capital stock to $2,000,000.

The Nebraska Hotel Company was organized in 1917, with a capital stock of $500,000, by Frank E. Schaaf and Edward O. Gregg, who acted as directors of the corporation until the first annual meeting. The articles in corporation were amended in 1918, and the capital stock increased to $1,500,000.

The Lincoln Security Company was organized in 1917, with a capital stock of $10,000, by Frank E. Schaaf, Edward O. Gregg and James H. Gore, who were to act as directors until the first annual meeting. This corporation never functioned. One share of stock was issued to F. E. Schaaf, and one share to Edward O. Gregg; no stock of the corporation was ever sold. The company never in fact transacted any business except on paper.

It is shown by the record that the general nature of the business to be conducted by the Nebraska Building & Investment Company was to lease or buy real estate, building materials, erect buildings, borrow money, issue bonds and mortgages, and to do whatever was necessary to carry the granted powers into effect. The business to be conducted by the Nebraska Hotel Company was to build, lease, operate, buy, sell and maintain hotels throughout the United States, with all the necessary powers incidental thereto. The Lincoln Security Company was organized for the purpose of transacting general real estate, rental, insurance and bonding business, with all powers incident thereto, to act as agent, sales agent, or manager for any person, partnership or corporation, as attorney in fact or otherwise, to develop lands and buildings thereon, to advance and loan money and enter into agreements of all kinds, to act as attorney in fact or trustee for issues of bonds, stocks, indebtedness, and to carry out any trust committed to it. At the time this suit was commenced, Frank E. Schaaf was president and manager of all three

defendant corporations, with their principal place of business at Lincoln, Nebraska, and he had general supervision and direction of all business transacted by them.

This, in fact, is an application for the appointment of a receiver to conduct and wind up the affairs of the defendant corporations. This is recognized as a harsh and extraordinary proceeding provided for by special statutes and only resorted to as a last desperate effort to conserve the property and property rights of interested parties, and in the absence of all other remedies. Did the court have statutory authority to do what it has done or attempted to do? As a matter of law it had only such rights in the premises as were delegated to it by special statute, and, if the court failed to follow and comply with the statute, then it was without jurisdiction.

Section 7811, Rev. St. 1913, is as follows: "No receiver shall be appointed except in a suit actually commenced and pending, and after notice to all parties to be affected thereby, of the time and place of the application, the names of the proposed receiver, and of his proposed sureties, and of the proposed sureties of the applicant. Such notice shall state upon what papers the application is based and be served upon the adverse party or his solicitor at least five days before the proposed hearing, and one additional day for every thirty miles of travel from the place of serving the notice to the place where the application is to be made, by the usually traveled route, or shall be published in the same manner as notices of the pendency of suits to nonresident defendants."

This being the requirement of the statute, the question is, has the court complied with its provisions. If it has not complied with the same, then all he has done in this matter is a nullity. It is incumbent upon the trial judge to comply with the statutes absolutely in the appointment of a receiver.

This statutory authority is a well-known rule of this court. A similar situation was involved and the rule was thoroughly analyzed and laid down in *Vila v. Grand Is-*

*land Electric Light, Ice & Cold Storage Co.*, 68 Neb. 222, 233. This case precisely meets the issues and situations as we find them here. There the issue was to "wind up the affairs and terminate the business, and indirectly dissolve the corporation." Also it was stated along this line in *State v. Farmers & Merchants Ins. Co.*, 90 Neb. 664, that "The power of the court to decree a dissolution and distribution of the effects * * * must be conferred by statute, and, in the absence thereof, such a proceeding is not within the jurisdiction of the court."

It may be inferred and it is plainly indicated in the case of *Miller v. Kitchen*, 73 Neb. 711, that in the appointment of a receiver in a stockholders' suit for mismanagement of corporate affairs, when neither the corporation nor the corporate affairs are insolvent, as it was in this case, there is no necessity for the appointment of a receiver to wind up the affairs of a corporation as in this case.

In *Wilcox v. Bickel*, 11 Neb. 154, the general rule is stated as follows: "A stockholder in a corporation has a remedy in chancery against the directors to prevent them from doing acts which would amount to a violation of the charter, or to prevent any misapplication of their capital or profits which might lessen the value of the shares, if the acts intended to be done amount to what is called in law a breach of trust or duty."

In the consideration of the instant case as to whether or not there was service upon the stockholders whose property rights were in court pending adjustment, we will adhere to the well-established rules of this court. In the case of *Wilson v. Bumstead*, 12 Neb. 1, we find a rule which should be invoked here. It is the law in this state, and every application for receiver must give notice of the time and place of hearing, and, in addition, the names of the proposed sureties for applicants, and the name of the proposed receiver. Along this line let it be known and let it be understood that we are intending to follow the provisions of the statute, and we call attention to the fact that section 7811, Rev. St. 1913, must be followed in this

proceeding. That section of the statute in this connection we say is imperative and mandatory, and so important that the legislature designed that, in a proceeding of this kind, where the law steps in and arbitrarily sells one's property, it is incumbent upon the law to do this only when the special regulatory steps have been taken as provided by statute. The legislature considered this subject of so much importance that it said: "Every receiver shall be considered the receiver of any party to the suit, and no others." Rev. St. 1913, sec. 7817. It must be conceded, then, that a party cannot be divested of his rights and of his property unless he has previous to this been properly brought into court. This was plainly stated in the celebrated case of *Chambers v. Barker*, 2 Neb. (Unof.) 523. We notice along this line that our statute, section 7818, Rev. St. 1913, requires a notice, and that is essential to jurisdiction.

It appears of record herein that the receiver's appointment must be void as to notice. It is plain that, in order to give the court complete jurisdiction, it is necessary to give notice to all parties desired to be brought into court and have their interests adjudged. The statute actually contemplates notice to those who have an interest in the property. In the drastic appointment of a receiver which results in the sale and distribution through the court of the property of the stockholders, then, in that case it can only be thought of when these stockholders have had an opportunity to be heard. In other words, the stockholders are entitled to their day in court. They are vitally interested, for property rights are being bartered away unless it can be shown that they are brought into court by virtue of statutory notice. This application of a receiver is the last and most drastic relief granted by the statute, and it is only granted when all other proceedings have been exhausted or have failed. We know nowhere of a statute intended to circumscribe, check, limit and control the powers of the court and give proper protection to a litigant more thoroughly than the rule enacted by the legislature in this

proceeding, and in no statute is it more incumbent upon the trial court to literally follow a statute than section 7811, Rev. St. 1913.

It is our opinion, and we hold, that under section 7818, Rev. St. 1913, an appointment of a receiver without notice is void, and if, as we have said, a receiver is only a receiver to the parties to the suit, and to no others, then notice is required to give the court complete and entire jurisdiction over all parties concerned or to be affected thereby. This must be done before the court can divest them of their property interest. The statute contemplates and insists upon notice to every one who has an interest in the property owned by the defendant corporations, as it more fully appears in section 7818, Rev. St. 1913, which is as follows: "Every order appointing a receiver without the notice provided for herein shall be void, and every such order heretofore made, under which the appointee has not possessed himself of the property in question, shall be suspended until an order shall have been made and the bonds executed and filed in accordance with the provisions of this chapter." Therefore it is plain and we conclude that there is no presumption of service, especially where notice is denied. Then it must be plain that there is nothing to support the jurisdiction either in the proof or the recital appointing the receiver. The provisions of the statute, as set out in section 7818, Rev. St. 1913, apply, and its requirements must be followed.

The power of a court to dissolve a corporation depends upon statute. *Osborn v. Montclac Park,* 89 Hun (N. Y.) 167. It will be seen in this case that, where a statute authorizes dissolution on certain grounds, the matter is left to the sound discretion of the court. Thus it is plain, as said by the New Jersey equity court in *Atlantic Trust Co. v. Consolidated Electric Storage Co.,* 49 N. J. Eq. 402: "The power to dissolve a corporation and wind it up is statutory. It formed no part of the original jurisdiction of the court. It was conferred by statute * * * The statute makes

insolvency the jurisdictional fact. * * * The power is only to be used when the ends of justice require its exercise. The court should strive in such cases to foster and preserve rather than strangle and destroy."

Where you have a statute made and provided for in such cases as the instant one it is absolutely mandatory and must be followed. It is a method which the legislature has adopted to guide and control courts in winding up the affairs of a corporation when dissolution is necessary. 2 Cook, Corporations (7th ed.) sec. 629; 10 Cyc. 988. In this state our statute makes insolvency one of the prerequisites to proceedings for dissolution. What way is there to terminate this proceeding and comply with the law? Nebraska law and statute really cover the whole ground.

In Beach on Receivers (Anderson's ed.) we have a citation in which the author, at section 421, says: "The winding up of the business and affairs of a corporation through a receiver has been said to be, in effect, a dissolution of the company, and, therefore, cannot be done by a court of equity without statutory authority. While the complete winding up of the affairs of a corporation cannot be said to amount to its dissolution, yet it is going to an extremity which courts of equity have refused to approach; it destroys the means afforded the corporation to transact business and virtually annihilates it, and practically puts the corporation out of existence.

"As will hereafter be shown, a court of equity has inherent power to appoint a receiver and take charge of the affairs of a corporation under certain conditions. But its power to continue in charge of the corporate assets, as well as to dispose of them, is limited. It cannot destroy the corporation, or so control and dispose of its assets as to virtually prevent it again exercising its corporate powers. Its power, even in extreme cases, is not to be extended beyond preserving the assets. The court will take charge of the property until the trouble has been adjusted, when it 'must lift its hand and retire.' "

"It follows necessarily that the control of the court of

the corporate property must be temporary. 'The court,' it has been correctly said, 'will take charge of the property until there is an adjustment of the trouble, or the election of a new board of directors; and when the officers are ready to proceed in the proper discharge of their duties the court must lift its hand and retire.' "

One thing is obvious in considering the report of the receiver. It is plainly shown, as appears of record, that the sale value of the Omaha property, the Capitol Hotel site in Lincoln, and the Franklin county property would be enough to relieve all indebtedness of the company.

In *Neall v. Hill*, 16 Cal. 145, 149, it is said: "We are also of opinion that the court erred in the appointment of a receiver, and in decreeing a sale of the property and a settlement of the affairs of the corporation. This decree, if permitted to stand, must necessarily result in the dissolution of the corporation; and in that event the court will have accomplished in an indirect mode that which, in this proceeding, it had no power to do directly."

This view is adhered to by the federal court and many state jurisdictions. It appears to be a necessity and it is a well-settled proposition that, in absence of a statute enlarging its powers, a court of equity has no jurisdiction at the suit of a stockholder or other private person to dissolve a solvent corporation. It is true that in this bill the object and purpose of the action, among other things, was to dissolve a corporation and to cause a general winding up of the affairs. We are convinced that property has been taken without authority of the statute and without due process of law. Then it must follow that the jurisdiction of the court is at issue, and, not having followed the statute, the court is without jurisdiction to appoint a permanent receiver to wind up the affairs of the solvent corporations. It was the object and purpose of the trial judge to protect and preserve these properties *pendente lite*, and it was incumbent upon him to follow the special mandatory directions of the statute. Under these circumstances, we are reminded of the fact of the decision of

*Woodmansee v. Ann Arbor Brick Co.*, 164 Mich. 688. There the court held, in a situation analagous to the facts in the instant case: "In a suit by stockholders and directors of a corporation against other directors who are in control of the corporate business, and who are alleged to be mismanaging the same, dissipating its assets, and planning and attempting to defraud complainants, the order of the circuit court at a preliminary hearing, appointing a receiver and depriving the corporation of its right to manage and dispose of the business and assets, after the coming in of an answer denying the averments of fraud, insolvency, and concealment, is not sustainable."

Misconduct or mismanagement of corporate business by officers is not ground, at the suit of complaining minority stockholders, for the appointment of a permanent receiver to wind up the affairs of a solvent corporation.

It has been held: "The appointment will not be made if the applicant has been guilty of laches, or of acquiescence in the wrong complained of; when the expense, or other disadvantage, will outweigh the advantage; when some other remedial relief is open to plaintiff; or when preventive relief will be effective." 1 Smith (Tardy's) Receivers (2d. ed.) 702. This quotation aptly expresses our opinion as we have heretofore said that a receivership is the most drastic remedy and the most expensive luxury known to the realm of law. It has been well and aptly said: "An order for the appointment of a receiver is more comprehensive in its effects than either an attachment, a sequestration, or an injunction, or, in fact, than all these writs combined, and is said to reverse the ordinary course of procedure in the administration of justice by levying a species of executions and determining afterwards who is entitled to the benefits." *State v. Ellis*, 108 La. 521, 531. This view meets our conception of the situation in this case and it is amply sustained by Nebraska decisions.

The petition shows on its face that the managing officers of the corporations were not properly representing the stockholders, but were using corporate power and corpo-

rate property for individual benefits, to the injury of other stockholders. Plaintiffs, while invoking the extraordinary powers of a court of equity to seize, hold and sell corporate property of which the stockholders generally were beneficial owners, on the ground, among others, that the officers in control were acting for themselves individually at the expense of those whom they wronged, did not give notice to many stockholders whose confidence had been thus abused. The respect in which plaintiffs did not give lawful notice of their application for the appointment of a receiver, and of their purpose to wind up its corporate affairs, was the failure to notify stockholders generally of the proceeding, the circumstances as shown by the petition being such that notice to derelict officers was not notice to stockholders. The latter had a right to notice of the application, to inquire into the conditions of the corporations, to oppose the appointment of a receiver, to make objections to the person suggested for receiver or appointed as such, to suggest corporate action to remove unworthy officers of the corporation and select new ones to take charge for the purpose of paying corporate debts and preserving corporate property and corporate business. The appointment, without notice, of even a temporary receiver to conserve corporate property until such a time as real conditions could be disclosed to the court was, under the circumstances, an abuse of discretion and erroneous. Plaintiffs, as stockholders, had no right, without notice to other stockholders, to use the equity arm of the court to seize, hold and sell property common to all stockholders. Because the officers of a corporation abuse their powers and betray the confidence of their principals is no reason why those who own the property lose their voice in its control, their dominion and their property rights. No set of stockholders without notice to the others can seize, hold and sell the latter's corporate property or use the judicial arm of the government for that purpose. Plaintiffs knew that the corporate officers did not properly represent the stockholders. Their petition so shows, and a receiver

should not have been appointed without any notice except to the officers themselves. *Smiley v. Sioux Beet Syrup Co.,* 71 Neb. 581; *Vila v. Grand Island Electric Light, Ice & Cold Storage Co.,* 68 Neb. 222; *Miller v. Kitchen,* 73 Neb. 711.

The evidence shows beyond question that there was no substantial ground for the appointment of a permanent receiver to wind up the affairs of the corporations and to sell their entire assets.   The undisputed evidence shows that the corporations were solvent and that only a portion of the corporate property was needed for the payment of corporate debts.   A sale of their property in bulk for the purpose of winding up the affairs of the solvent corporations was an invasion of private rights requiring an exercise of equity powers not committed to the district court. The sale of properties of the corporations in bulk for the purpose of winding up the affairs of the solvent corporations, without giving many of the stockholders, the equitable owners, notice of the proceedings or a day in court was made without warrant of law.   The sale by the receiver and the proceedings on which it was based were absolutely void.

The appointment of the receiver, the orders leading up to the sale, the order for the sale, and the sale itself are vacated and set aside, and the cause is remanded for further proceedings.                                                    REVERSED.