## EPPLEY v. BAYLOR (two cases).*

## In re NEBRASKA HOTEL CO.

(Circuit Court of Appeals, Eighth Circuit. October 22, 1923.)

Nos. 243, 6406.

1. Bankruptcy ⟨⟨⟩440—Order of referee, affirmed by District Court, reviewable only by petition to revise.

Where the facts were not in dispute, an order of the referee, affirmed by the District Court, requiring one claiming the right to possess bank-

rupt's property to deliver it to trustee, can be reviewed by a petition to revise under Bankruptcy Act, § 24b (Comp. St. § 9608), but not by an appeal.

2. **Bankruptcy** ⊜➡440—**Appeal and petition to revise mutually exclusive.**

A review by an appeal and by petition to revise, under Bankruptcy Act, § 24b (Comp. St. § 9608), are mutually exclusive.

3. **Bankruptcy** ⊜➡288(1)—**Party purchasing with knowledge that petition had been filed not entitled to have his right to reimbursement adjudicated in a plenary suit.**

Where, though purchaser knew that a receiver's right to sell corporate property was being litigated in the state court and a petition in bankruptcy had been filed, he entered into a contract with receiver to purchase the property, he was not, after corporation was adjudicated a bankrupt, in the position of a bona fide purchaser, with right to retain the property until he had been reimbursed for payments made on the purchase price and for improvements made on the premises, and could not assert that the referee in bankruptcy was without power, in summary proceedings, to order him to surrender the property to the trustee, and that his rights should be adjudicated in a plenary suit.

4. **Bankruptcy** ⊜➡20(2)—**State court receiver's sale after filing of bankruptcy petition confers no rights on purchaser.**

After an involuntary petition in bankruptcy is filed, a receiver appointed by a state court can confer no adverse right by a sale of the assets to one who has knowledge of the pendency of the bankruptcy petition, though an adjudication of bankruptcy was delayed for nearly two years, owing to the pendency of contempt proceedings in the state court against the petitioners in the bankruptcy proceedings; there having been no dismissal of the petition in the bankruptcy court as contemplated by Bankruptcy Act, § 59g (Comp. St. § 9643), and the decrees of the state court having been later reversed on appeal.

Petition to Revise Order of and Appeal from, the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

In the matter of the Nebraska Hotel Company, bankrupt, in which F. B. Baylor was appointed trustee. An order of the referee that Eugene C. Eppley surrender possession of certain property was affirmed by the District Court, and he seeks a review both on petition to revise and on appeal. Appeal dismissed; petition to revise dismissed.

Irving F. Baxter, of Omaha, Neb. (John J. Ledwith, of Lincoln, Neb., and John F. Stout, Halleck F. Rose and Norris Brown, all of Omaha, Neb., on the brief), for petitioner and appellant.

Alvin F. Johnson and John A. Rine, both of Omaha, Neb. (Harley G. Moorhead, of Omaha, Neb., on the brief), for respondent and appellee.

Before LEWIS, Circuit Judge, and VAN VALKENBURGH and KENNEDY, District Judges.

LEWIS, Circuit Judge. [1, 2] In March, 1923, the trustee in bankruptcy (respondent in No. 243, Original, and appellee in No. 6406) of the estate of Nebraska Hotel Company, a corporation, procured from the referee an order on Eugene C. Eppley to show cause before the referee why he should not be ordered to surrender to the trustee the

⊜➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

possession of six named hotels in certain Nebraska cities and the furniture and other personal property in them used in the conduct of said hotels, and to also deliver to the trustee the capital stock of a corporation, Interstate Hotel Company, which held a lease on another hotel in Omaha. All of this property unquestionably belonged to the bankrupt and Eppley made no claim to ownership; but in his return to the order he undertook to set up an adverse possessory right in himself by alleging that he claimed and had an equitable lien on all of the property which had attached before the jurisdiction of the bankruptcy court was acquired, and which entitled him to remain in possession until the lien was discharged, that the right he asserted should be determined only in a plenary suit, that the referee without his consent was without authority to hear and determine it, and he objected to the summary proceeding. The referee went on with the hearing and made an order that Eppley forthwith surrender possession of and deliver to the trustee all of the property. Eppley caused the record of the proceedings to be certified to the District Court, which confirmed the order of the referee, and he now presents here, both on petition to revise and on appeal, the question whether that order was rightfully made. The facts which determined the rights of the parties to possession on the hearing before the bankruptcy court are not in dispute, they raised only an issue of law, the two methods of review are mutually exclusive, and we think the controversy in the proceedings below can be brought here only by the method provided for in section 24b of the Bankruptcy Act (Comp. St. § 9608). Eppley's appeal is therefore dismissed, and we will consider the case on the petition to revise. First National Bank v. Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051; Schweer v. Brown, 195 U. S. 171, 25 Sup. Ct. 15, 49 L. Ed. 144; Shea v. Lewis, 206 Fed. 877, 124 C. C. A. 537; Gibbons v. Goldsmith, 222 Fed. 826, 138 C. C. A. 252; Benjamin v. Trust Co., 216 Fed. 887, 132 C. C. A. 447; In re Weidhorn, 253 Fed. 28, 165 C. C. A. 48.

[3, 4] Eppley based his asserted right to retain possession on a contract which he made on April 7, 1921, to purchase all of the properties. He further alleged that he took immediate possession and that he had made improvements and had kept up insurance and paid taxes to a large amount, and that some of the money he paid on the purchase price had been applied in discharge of mortgage liens against some of the properties. But his return further shows that four creditors of the Nebraska Hotel Company filed their petition in the bankruptcy court on February 19, 1921, to have the Hotel Company adjudged a bankrupt. His contract to purchase, under which he took possession, was made 46 days after that petition had been filed; and he knew, not only constructively but actually, when he took possession and paid out his money, that the petition in bankruptcy had been filed and was then pending; for in that contract there is this paragraph:

"It is understood and agreed between the parties hereto that in the event the party of the first part, or his successor in office, is dispossessed of the property herein described, either by bankruptcy proceedings now pending against the corporations herein mentioned, or otherwise, that then, and in

that event, this contract shall be cancelled and held for naught, and the parties hereto shall be restored to their previous status quo, unless any receiver, trustee in bankruptcy, or other official taking charge of or administering the properties should with the approval of the court appointing him, ratify this agreement."

It further appears from his return that the Hotel Company was adjudged a bankrupt on that petition on November 14, 1922. So that Eppley, when he made his contract, took possession of the properties, made payments on the purchase price and made the other expenditures for which he claims an equitable lien and the right to remain in possession until that lien is discharged, knew that the properties were then in the custody of the law and that the bankruptcy court had jurisdiction over them and the bankrupt, and that he could not obtain an adverse right to or interest in them while that proceeding was pending without the consent and under and pursuant to the orders of that court. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 301, 32 Sup. Ct. 96, 56 L. Ed. 208; Everett v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154; Lazarus v. Prentice, 234 U. S. 263, 34 Sup. Ct. 851, 58 L. Ed. 1305; In re Sage, 236 Fed. 644, 149 C. C. A. 640; In re Diamond's Estate, 259 Fed. 70, 170 C. C. A. 138; Bailey v. Baker Ice Machine Co., 239 U. S. 269, 36 Sup. Ct. 50, 60 L. Ed. 275. His conduct was an interference with the jurisdiction of that court and and its right and duty to effectively proceed in that cause. But to meet this and avoid the principle of those cases Eppley further set up in his return that the contract he made for purchase was with one Barkley, a receiver of the properties who had been appointed on January 27, 1921, by the State district court at Lincoln, Nebraska, that Barkley as such receiver agreed to sell him the properties for a named sum to be paid by Eppley in instalments, and that the district court approved that contract of sale, that Barkley had possession of the properties as receiver and delivered possession to him under the terms of the contract, that he acted in good faith in the transaction with Barkley and made payments on the purchase price and other expenditures for which he claims an equitable lien and the right to remain in possession in the belief that Barkley, with the approval of the State court, had the right to sell to him, and that therefore he should be regarded and treated as a good-faith purchaser at a judicial sale and his rights as such protected. In support of this the petitioner cites Davis v. Gaines, 104 U. S. 386, 26 L. Ed. 757. It there appeared that Daniel Clark died in August, 1813. A will which he had executed in May, 1811, went to probate as his last will and testament the next day after his death, in which he devised all of his estate to his mother, Mary Clark. It was later discovered that he left a will executed by him July 13, 1813, which was filed for probate in 1855, and was recognized by the judgment of the Supreme Court of the State as his last will and testament. The controversy was between claimants of title to lands left by Daniel Clark, one holding by conveyances from a sale under the will first probated and the other under the second. After stating that the probate court had jurisdiction to admit the first will to probate and to authorize a sale of the property of the testator, the court said:

"If the Fortiers purchased in good faith under an order of sale made by the probate court, for a valuable consideration, without any knowledge of the later will of Daniel Clark, and while the authority of the executor appointed and qualified under the first will continued, and there was no fatal defect in the proceedings antecedent to the sale and conveyance to them, does the fact that such later will, making other dispositions of his property, was discovered and admitted to probate, render void their title?"

The question was answered in the negative. On the inquiry as to whether the Fortiers had knowledge or notice of Daniel Clark's will of 1813, and whether they had any notice that his will of 1811 was not his last will and testament, it found that there was not a scintilla of proof, that there was no proof that the Fortiers purchased in bad faith, but that it established that they were purchasers in good faith, and it was held that purchasers at the sale under the first will and in possession, who had paid the purchase money in good faith, which had been applied to the extinguishment of a mortgage executed by Daniel Clark upon the property sold, could not be ousted of possession without repayment or tender of the purchase money so paid and applied. But it was also held that one who purchased at a sale under the first will with notice that it was claimed that the decedent had left a will executed at a subsequent date, was a purchaser in bad faith. Other cases cited by the petitioner announce the same principle. It is our opinion on the admitted facts that Eppley is not in the position of a good-faith purchaser. Before he made his contract with Barkley he had full notice that Barkley's authority to make the sale and the jurisdiction of the State court to approve that sale were under challenge and in litigation. The suit in which Barkley was appointed receiver was instituted December 11, 1920. It was brought by three stockholders of the Nebraska Hotel Company against that company and other companies associated with it. Their complaint asked for the appointment of a receiver and that the affairs of the Hotel Company be wound up and its assets distributed among its creditors and stockholders. Other stockholders in that company intervened and objected to the appointment of a receiver; they challenged the jurisdiction of that court to make the appointment. After Barkley was appointed on January 27, 1921, they moved the court to set aside its order of appointment, and they and the Nebraska Hotel Company filed objections to the confirmation of the sale to Eppley. He knew before he made his contract to purchase that the jurisdiction of the State court to appoint a receiver, to sell the properties of the Hotel Company, or to take any action in that cause was in question. He was present in the district court when objections to its jurisdiction were presented and argued. That case was appealed to the State Supreme Court, and after the appeal Eppley intervened and asked to be heard on a motion to reduce the amount of the supersedeas bond. He filed written objections to the motion. The Supreme Court reversed the order of the district court appointing Barkley receiver and directed that all orders made in the cause be vacated. Its opinion was delivered June 12, 1922. Furrer v. Nebraska Bldg. & Inv. Co., 108 Neb. 698, 189 N. W. 359. In that opinion it said:

"The sale by the receiver and the proceedings on which it was based were absolutely void. The appointment of the receiver, the orders leading up to the sale, * * * and the sale itself are vacated and set aside."

It held that the lower court had exceeded its authority and power because of non-compliance with statutory requirements. Pursuant to the holding of the Supreme Court and its mandate, which went down in September, 1922, the district court put the sheriff of the county in temporary charge of the properties, and thereafter on adjudication of the Nebraska Hotel Company a bankrupt the district court ordered the sheriff to turn over the properties to the officers of the bankruptcy court, and thence wholly ceased to take further action in the receivership cause. The delay in prosecuting the petition in bankruptcy of the four creditors to final adjudication is explained in this way: The State district court seems to have been of the opinion that those who were promoting that proceeding were in contempt of its authority, and it imposed punishment on some of them. Three of the four petitioning creditors asked leave to withdraw from the petition. It does not appear that the bankruptcy court acted upon that request, the petition was not dismissed nor were the necessary steps taken that would permit its dismissal (Bankruptcy Act, § 59g [Comp. St. § 9643]), other creditors came in after the receivership proceedings and the sale had been declared void, as petitioning creditors and joined in the original petition, the bankrupt filed an amended answer admitting the acts of bankruptcy charged against it, and on November 14, 1922, it was adjudged a bankrupt. On appeal of the contempt proceedings to the Supreme Court that action of the district court was also reversed and set aside. Schaaf v. State (Neb.) 189 N. W. 295. When Eppley made his contract with Barkley he knew that Barkley's right to sell was then in litigation. He bought with his eyes open and chose to take a chance in the result of that litigated question. That he was in doubt whether he would get anything under the contract with Barkley is further shown by the clause in that contract quoted supra. He was apprehensive that Barkley was without right to make a sale of the properties and that the possession which he took from Barkley would be wrongful because of the bankruptcy proceedings then pending against the Hotel Company. His contract shows that he knew the risk he was taking and the chance of his being put out on account of the bankruptcy proceedings.

"There can be no such thing as good faith in an adverse holding, where the party knows that he has no title, and that, under the law, which he is presumed to know, he can acquire none by his occupation." Deffeback v. Hawke, 115 U. S. 393, 407, 6 Sup. Ct. 95, 102 (29 L. Ed. 423).

Eppley made the payments and other expenditures under the contract with Barkley, and we cannot believe that when he did so he thought his transaction with Barkley gave him the right to withhold possession from the trustee in bankruptcy until he should be reimbursed. He expected Barkley to make restitution in event his purchase should be declared void, and when the Nebraska Supreme Court so held he applied to Barkley and received back $43,000, all the latter then had of the payments. Barkley did not hold adversely, and after the petition in bankruptcy was filed on February 19th he could confer no adverse right on any one else, even though his appointment as receiver had been lawfully made. In re Watts, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933; In re Sage (D. C.) 224 Fed. 525; In re Rathman, 183 Fed. 913,

922, 106 C. C. A. 253; In re Hecox, 164 Fed. 823, 90 C. C. A. 627; Bank of Andrews v. Gudger, 212 Fed. 49, 128 C. C. A. 505.

Our conclusion is, that petitioner's adverse possessory claim is a fallacious conception of his rights and wholly without merit. The order of the bankruptcy court was rightfully made and the petition to revise will also be dismissed.